**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| L. LIN WOOD, JR., individually;<br><br>   Plaintiff,<br>v.<br><br>BRAD RAFFENSPERGER, in his official capacity as Secretary of State of the State of Georgia; REBECCA N. SULLIVAN, in her official capacity as Vice Chair of the Georgia State Election Board; DAVID J. WORLEY, in his official capacity as a Member of the Georgia State Election Board; MATTHEW MASHBURN, in his official capacity as a Member of the Georgia State Election Board; and ANH LE, in her official capacity as a Member of the Georgia State Election Board,<br><br>   Defendants. | CIVIL ACTION FILE NO.<br>1:20-cv-05155-TCB |

**INTERVENORS' BRIEF IN SUPPORT OF PROPOSED MOTION
TO DISMISS**

## I.   INTRODUCTION

This lawsuit is Mr. Wood's third and latest attempt to use the federal judiciary to attempt to dismantle Georgia's signature matching and absentee ballot processing regime, sow distrust and discord about its voting machines, and generally disrupt the State's orderly election process in the 2020 general election and runoff. His Complaint raises the exact same claims that were discredited and dismissed in Mr. Wood's previous cases, as well as cases recently brought by Republican Party committees that have been thoroughly rejected by the federal courts. *See Lin Wood v. Raffensperger*, No. 1:20-cv-04651-SDG, 2020 WL 6817513 (N.D. Ga. Nov. 20, 2020) ("*Wood I*"), *aff'd*, No. 20-14418, 2020 WL 7094866 (11th Cir. Dec. 5, 2020) ("*Wood II*") (finding Wood lacked standing and was unlikely to succeed on claims that Georgia's signature matching procedures violated equal protection); *Pearson v. Kemp*, No. 1:20-cv-04809-TCB, (N.D. Ga. Dec. 7, 2020), ECF No. 1, 74 (dismissing challenge to signature matching regime and absentee ballot processing and voting machine claims under equal protection clause); *see* also Tr. of Motions Hearing, *Pearson v. Kemp*, No. 1:20-CV-4809-TCB (N.D. Ga. Dec. 7, 2020) ("Pearson Tr.") (attached as Ex. A); *see also Twelfth Congressional Dist. Republican Comm. v. Raffensperger*, No. 1:20-cv-00180-JRH-BKE (S.D. Ga. Dec. 17, 2020), ECF No. 47 (dismissing drop box and absentee ballot processing claims under same theories); *Ga. Republican Party v.*

1

*Raffensperger* ("*GRP I*"), No. 1:20-cv-05018-ELR (N.D. Ga. Dec. 17, 2020), ECF No. 46 (dismissing vote dilution challenge to Georgia's signature matching regime), *aff'd*, No 20-14741-RR (11th Cir. Dec. 21, 2020) (attached as Ex. B); *see also Ga. Republican Party v. Raffensperger* ("*GRP II*"), No. 2:20-cv-00135-LGW-BWC (S.D. Ga. Dec. 18, 2020), ECF No. 31 (dismissing First and Fourteenth Amendment and Equal Protection Clause challenges to voters who have registered since November election).

Well-established legal principles—which Mr. Wood, a barred attorney sworn to ensure that the claims he brings are well-founded in fact and law, should know—bar this case. The claims he raises fail for the same reasons previously articulated by the Eleventh Circuit, this Court, and Honorable U.S. District Court Judges Grimberg, Ross, and Hall in cases raising the same claims. Not only does Mr. Wood lack Article III standing, his claims are also barred by laches, estoppel, and the Eleventh Amendment, and the Complaint's allegations fall far short of federal pleading standards, failing to articulate any cognizable claim. Just as this Court rejected Mr. Wood's identical claims a short two weeks ago, it should do so again now.

## II.   BACKGROUND

### A. The Challenged Rules and Procedures

2

At this point, this Court is quite familiar with Georgia's signature matching process, absentee ballot processing practices, and voting machines, having dealt with them most recently in *Pearson v. Kemp*. To provide important context for this case, Intervenors briefly revisit them and discuss Georgia's drop box rule.

In the leadup to Georgia's 2020 elections, Brad Raffensperger, the Secretary of State (the "Secretary"), and the other members of the State Election Board (the "SEB") adopted and promulgated various rules and guidelines related to absentee ballots. At issue here are : (1) an Official Election Bulletin issued by the Secretary on May 1, 2020 (the "Signature Matching Bulletin") pursuant to a settlement agreement entered into with Proposed Intervenors and others; (2) Rule 183-1-14-0.7-.15 (the "Ballot Processing Rule"), first adopted by the SEB at its July 1 meeting and readopted on November 23; and (3) Rule 183-1-14-0.8-.14 (the "Drop Box Rule"), first adopted by the SEB at its February 28, 2020 meeting and then readopted with minor variations at its July 1 and November 23 meetings. In this action, Mr. Wood also challenges Georgia's use of Dominion voting machines.

***Signature Matching Bulletin***. Although it grew out of a settlement agreement between the Secretary, Proposed Intervenors and others in *DPG v. Raffensperger*, No. 1:19-cv-5028 (N.D. Ga.), the Signature Matching Bulletin did not modify Georgia's election laws. It simply issued guidance to facilitate statewide uniform review of

3

allegedly mismatched signatures to help protect against lawful voters having their ballots erroneously rejected as consistent with Georgia and federal law. Among other things, it established that signatures flagged as mismatches should be reviewed by two additional registrars, deputy registrars, or absentee ballot clerks. *Wood I*, 2020 WL 6817513, at *3. It also required counties to continue to verify absentee voters' identities by comparing signatures as required by Georgia law. *Id.* The Signature Matching Bulletin has been in place and used without incident for every election held in Georgia in 2020—i.e., the June 9 primary and August 11 primary runoff elections, as well as the November 3 general and special U.S. Senate elections. Officials in Georgia rejected absentee ballots for signature mismatches under these standards during these elections at rates comparable to past elections and to those in other states.[1]

**Ballot Processing Rule.** The Ballot Processing Rule similarly did not alter Georgia election law. It simply permits county officials to open and process mail ballots prior to Election Day, enabling the faster tabulation of ballots on Election Day,

---

[1] A complete discussion of the history and purpose of the Signature Matching Bulletin can be found at *Pearson v. Kemp*, No. 1:20-cv-04809-TCB (N.D. Ga. Nov. 30, 2020), ECF No. 20 at 3; *Wood I*, No. 1:20-cv-04651-SDG (N.D. Ga. Nov. 18, 2020), ECF No. 8 at 10; *GRP I*, No. 1:20-cv-05018-ELR (N.D. Ga. Dec. 14, 2020), ECF No. 15 at 8; *Twelfth Congressional Dist.*, No. 1:20-cv-00180-JRH-BKE (S.D. Ga Dec. 11, 2020), ECF No. 10 at 6.

4

a prudent and necessary decision in light of the surge in mail-in voting during the pandemic. It was issued in accordance with the SEB's public notice and comment procedures and adopted for the first time over six months ago in July 2020, in response to unique challenges and stressors on elections processes during the pandemic. As a result, it was in place for the August 11 primary runoff elections, as well as the November 3 elections, in each operating without issue or incident.[2]

**Drop Box Rule**. The Drop Box Rule also did not alter Georgia election law. By its terms, it allows county election officials "to establish one or more drop box locations as a means for absentee by mail electors to deliver their ballots to the county registrars." Compl. for Injunctive & Declaratory Relief ("Compl."), ECF No. 1, Ex. A, at 1. The Drop Box Rule, too, was issued in accordance with the SEB's regular public notice and comment procedures. It was adopted for the first time nearly ten months ago in February 2020 and has been in place for every election held in Georgia in 2020, operating without issue or incident.

**Dominion Machines**. In 2019, the General Assembly enacted a comprehensive election reform bill which modernized Georgia's voting systems, requiring the state

---

[2] A complete discussion of the history and purpose of this rule can be found at *Twelfth Congressional Dist.*, No. 1:20-cv-00180-JRH-BKE (S.D. Ga Dec. 11, 2020), ECF No. 26 at 4-6.

to upgrade the voting machines it utilized "as soon as possible." O.C.G.A. § 21-2-300(a)(2). After review and acquisition process, the new Dominion voting machines were deployed for use in the June 2020 Primary. Mr. Wood now challenges the use of those machines, relying on a thoroughly debunked theory that the machines were manipulated by the government of former Venezuelan President Hugo Chavez. *See* Compl. ¶¶ 55-71.

## B.   The January 2021 Runoff

On November 3, Georgia held its general and special U.S. Senate elections. Georgia requires a winning candidate to receive "a majority of the votes cast." O.C.G.A. § 21-2-501(a)(1). Because no candidate for either seat won a majority, they will be filled in a runoff. That election will culminate on January 5, 2021, but it is already well underway. Advance voting began on December 14. As of the day Mr. Wood filed his Complaint (December 18), hundreds of thousands of absentee ballots had already been returned and signatures matched. *See* Georgia Early Voting Statistics—2021 Senate Run-Off Election, U.S. Elections Project, https://electproject.github.io/Early-Vote-2020G/GA_RO.html (Dec. 18, 2020).

In the midst of this election, Mr. Wood seeks to change the rules. He challenges the Signature Matching Bulletin, Ballot Processing Rule, Drop Box Rule, and the use of Dominion's voting machines, asserting that each violates the U.S. Constitution's

6

Equal Protection Clause (Count I), Compl. ¶¶ 72-78, Due Process Clause (Count II), *id.* ¶¶ 79-84 and Guarantee Clause (Count III), *id.* 85-93. This is not the first time Mr. Wood, or plaintiffs like him, have brought these claims.

### C.        Previous Litigation

#### 1.        Mr. Wood's First Suit (*Lin Wood v. Raffensperger*)

On November 13, 2020, Mr. Wood filed suit, challenging, in pertinent part, the constitutionality of the Signature Matching Bulletin. *Wood I*, ECF No. 5. Mr. Wood argued that the Bulletin was contrary to Georgia law, exceeding the Secretary's authority to articulate uniform, statewide procedures for voting, and that it infringed upon Mr. Wood's First and Fourteenth Amendment rights and violated the Equal Protection Clause by treating different voters disparately and diluting their votes.[3] After expedited briefing, the district court held a hearing at the culmination of which it resoundingly rejected Mr. Wood's legal theories. The court found that, not only did Mr. Wood lack standing, his claims were independently barred by the doctrine of laches, and he failed to carry his burden on even one of the four factors necessary to justify the temporary restraining order he sought. *Wood I*, 2020 WL 6817513, at 8.

---

[3] Mr. Wood raised his vote dilution claims for the first time in oral argument before the district court judge, the Honorable Steven D. Grimberg. Nevertheless, both Judge Grimberg and the 11th Circuit substantively ruled on Mr. Wood's vote dilution claim, dismissing it.

Mr. Wood appealed the denial, and the Eleventh Circuit promptly affirmed. *See generally Wood II*, 2020 WL 7094866. In doing so, it specifically found that Mr. Wood lacked standing because he fails to allege the "first and foremost of standing's three elements": an injury in fact. *Id.* at *4 (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quotation marks omitted)).

### 2.    Mr. Wood's Second Suit (*Pearson v. Kemp*)

In a transparent attempt to sidestep his first failed attempt to use the judiciary to overturn the results of Georgia's election, Mr. Wood filed a second suit, this time acting as counsel to a group of Georgia voters and the Cobb County Republican Party. That suit, *Pearson v. Kemp*, No. 1:20-cv-04809-TCB, ECF No. 1, was assigned to this Court. The gist of the suit was that Georgia election officials were engaged in an elaborate international conspiracy to "fraudulently manipulat[e] the vote count to make certain the election of Joe Biden as President of the United States." *Id.* ¶ 2. The complaint borrowed heavily from the "factual" allegations that had been found inadequate in *Wood I*, re-filing eleven affidavits from that case. It contended, again, that the Signature Matching Bulletin, *see, e.g.*, *id.* ¶ 136, and processing and tabulation of ballots, *id.* ¶¶ 116-121, were unconstitutional, alleging violations of the Equal Protection Clause, *id.* ¶¶ 143-167, and the Due Process Clause, *id.* ¶¶ 168-181. On December 7, this Court dismissed Mr. Wood's second suit for lack of standing and

laches. Mr. Wood appealed that decision, and the matter remains ongoing. Pearson Tr. at 41:15-18.

### 3.    Other Relevant Georgia Federal Litigation

Since this Court dismissed Mr. Wood's second suit, an onslaught of lawsuits have been filed in this District and the Southern District making similar claims about Georgia's elections procedures, this time in the context of the runoff election.

*First*, in the *Twelfth Congressional District Republican Committee* case, filed on December 9th in the U.S. District Court for the Southern District of Georgia, Republican committee plaintiffs challenged the Drop Box rule, the Signature Matching Bulletin, and the Ballot Processing rule, raising claims that are extraordinarily similar to those that Mr. Wood now raises here. No. 1:20-cv-00180-JRH-BKE, ECF No. 1. The district court held a hearing on December 17, at the end of which it denied the plaintiffs' motion for a temporary restraining order and dismissed the case, finding that the plaintiffs lacked standing to bring their claims and that, regardless, *Purcell v. Gonzales*, 549 U.S. 1, 5–6 (2006) (per curiam), which cautions federal courts against intervening in an ongoing election, would independently bar the requested relief. *Twelfth Congressional Dist.*, No. No. 1:20-cv-00180-JRH-BKE (S.D. Ga. Dec. 17, 2020), ECF No. 47.

9

*Second*, the Georgia Republican Party and others filed a lawsuit on December 9th in this District, attacking the state's signature matching regime under similar theories. *GRP I*, ECF No. 1. That case was assigned to the Honorable Eleanor Ross who denied the plaintiffs' motion for a temporary restraining order and dismissed the case for want of jurisdiction. *GRP I*, No. 1:20-cv-05018-ELR (N.D. Ga. Dec. 17, 2020), ECF No. 46. This dismissal was affirmed by the Eleventh Circuit just yesterday. *GRP I*, No. 20-14741 (11th Cir. Dec. 21, 2020).

*Third*, the Georgia Republican Party and others filed yet another suit on December 17, this time in the Southern District, again raising Equal Protection and Due Process claims under the same vote dilution theory that animates Mr. Wood's Complaint. *GRP II*, No. 2:20-cv-00135-LGW-BWC, ECF No. 1. That case was dismissed by Judge Wood on the same day that Mr. Wood filed the instant lawsuit. *GRP II*, No. 2:20-cv-00135-LGW-BWC, ECF No. 31 (S.D. Ga. Dec. 18, 2020).[4]

Mr. Wood's current lawsuit thus marks at least the fourth time that Georgia's signature matching regime has been attacked in federal court, the third challenge to

---

[4] In addition to the federal litigation discussed above, at least four state court actions have been filed challenging signature matching, absentee ballot processing, and drop boxes. At least two have since been dismissed: *J. Wood v. Raffensperger*, No. 2020-cv-342959 (Fulton Cnty. Sup. Ct. Dec. 8, 2020); *Boland v. Raffensperger*, No. 2020-cv-343018 (Fulton Cnty. Sup. Ct. Dec. 8, 2020) (attached at Ex. C).

the Ballot Processing Rule, and the second challenge to the Drop Box Rule. It is also the third time that Mr. Wood has brought fraud conspiracies related to Georgia's Dominion voting machines. Mr. Wood has not discovered some new path to victory: he relies the same allegations that have been consistently rejected in his previous suits, as well as in suits brought by others over the last several weeks. Like each of these other actions, this one, too, cannot sustain scrutiny.

## III.   LEGAL STANDARD

"The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance. This inquiry involves 'both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'" *Kowalski v. Tesmer*, 543 U.S. 125, 128-29 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). For a party to have standing, it must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where a complaint expressly alleges "fraud," Rule 9(b) requires pleading with "particularity,"

11

i.e., the "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.'" *U.S. ex rel. Matheny v. Medco Health Sols., Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012).

## IV.    ARGUMENT

### A.    The Complaint should be dismissed for lack of standing.

Mr. Wood fails at the very threshold: he has neither pleaded nor suffered a cognizable injury-in-fact, asserting only generalized grievances about Defendants' supposed defiance of state law and lacks standing to bring his claims. As a result, this Court lacks jurisdiction and the Complaint should be dismissed in its entirety.

### 1.    Mr. Wood lacks standing to assert his equal protection claim.

Mr. Wood's claim that he is injured because the "unconstitutional" votes of others due to early ballot processing, drop boxes, and voting machines is not cognizable. *See* Compl. ¶¶ 75-76. The Eleventh Circuit squarely found this just two weeks ago on these same claims, made by this very plaintiff. *See Wood II*, 2020 WL 7094866, at *4-5 ("Wood lacks standing because he fails to allege the first and foremost of standing's three elements: an injury in fact.") (quotation marks omitted) (citing *Spokeo, Inc.*, 136 S. Ct. at 1547); *see also id.* at 5 ("Vote dilution in this context is a 'paradigmatic generalized grievance that cannot support standing.") (quotation

12

marks omitted) (citing *Bognet v. Sec'y Commonwealth of Pa.*, 980 F.3d 336, 356 (3d Cir. 2020)); *see also* Pearson Tr. 42:16-43:1. And it found so for good reason: the purported injury of vote-dilution-through-unlawful-balloting has been repeatedly rejected by federal courts as a viable basis for standing, because supposed vote dilution caused by counting supposedly improper votes would affect all Georgia voters, not just Mr. Wood. *See, e.g.*, *Bognet*, 980 F.3d at 354–56 ("Th[e] conceptualization of vote dilution—state actors counting ballots in violation of state election law—is not a concrete harm under the Equal Protection Clause of the Fourteenth Amendment."); *Donald J. Trump for President, Inc. v. Cegavske*, No. 2:20-CV-1445–JCM (VCF), 2020 WL 5626974, at *4 (D. Nev. Sept. 18, 2020) (finding vote dilution theory too speculative to confer standing). Accordingly, Mr. Wood continues to have no standing to bring these claims.

### 2. Mr. Wood lacks standing to assert his due process claim.

For similar reasons, Mr. Wood cannot establish standing on his due process claim, which appears to assert that Georgia elections officials "intentional[ly] fail[ed] to follow election law as enacted by the Georgia Legislature" by utilizing the procedures set out in the Signature Matching Bulletin, Ballot Processing procedures, drop boxes, and unsecure voting machines. Compl. ¶¶ 80, 82. Mr. Wood's objection, in other words, is that Defendants failed to follow Georgia election law. This is once

13

again a generalized grievance insufficient to satisfy Article III. *Wood I*, 2020 WL 6817513; *see also Lance v. Coffman*, 549 U.S. 437, 440–41 (2007); *see also Nolles v. State Comm. for Reorganization of Sch. Dists.*, 524 F.3d 892, 900 (8th Cir. 2008) (finding voters lacked standing to allege substantive due process claim regarding implementation of election law where they failed to allege particularized injury). It is also barred by the Eleventh Amendment, as discussed further *infra* at 18-19.

### 3.    Mr. Wood's Guarantee Clause claim is nonjusticiable.

Mr. Wood's Guarantee Clause claim is also nonjusticiable. The Guarantee Clause makes the "'guarantee of a republican form of government *to the states*; the bare language of the Clause does not directly confer any rights on individuals vis-à-vis the states.'" *Democratic Party of Wis. v. Vos*, 966 F.3d 581, 589 (7th Cir. 2020) (quoting *Largess v. Supreme Jud. Ct. for the State of Mass.*, 373 F.3d 219, 225 (1st Cir. 2004)). Thus, Mr. Wood is not the proper party to bring any such claim. In addition, to the extent he has a grievance that could arise under this Clause, it is once again a generalized one, without injury, causation, or redressability, and therefore insufficient to satisfy Article III. *See id.* The Supreme Court itself "has several times concluded . . . that the Guarantee Clause does not provide the basis for a justiciable claim." *Rucho v. Common Cause*, 139 S.Ct. 2484, 2506 (2019); *Baker v. Carr*, 369 U.S. 186, 217-229 (1962). Accordingly, this claim is not justiciable here.

14

**B.      Collateral estoppel independently bars Mr. Wood's equal protection claims.**

Mr. Wood's equal protection claims are independently barred under the collateral estopped doctrine. Collateral estoppel or issue preclusion bars an issue from further litigation when

> (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.

*CSX Transp., Inc. v. Brotherhood of Maint. of Way Emps.*, 327 F.3d 1309, 1307 (11th Cir. 2003).

The Court in *Wood I*, and affirmed by the Eleventh Circuit in *Wood II*, found that Mr. Wood lacked standing to bring the exact same equal protection claim he attempts to bring here. *Wood I*, 2020 WL 6817513 (N.D. Ga. Nov. 20, 2020), *aff'd*, *Wood II*, 2020 WL 7094866 (11th Cir. Dec. 5, 2020). This prior ruling bars Mr. Wood from relitigating his lack of standing for the same claim in this case. *See, e.g., Perry v. Sheahan*, 222 F.3d 309, 317-18 (7th Cir. 2000) ("A dismissal for lack of jurisdiction precludes relitigation of the issue actually decided, namely the jurisdictional issue."); *White v. Sch. Bd. of Hillsborough Cty*. 636 F. Supp. 2d 1272, 1277-78 (M.D. Fla. 2007).

15

## C. Mr. Wood's claims are barred by laches.

Even if Mr. Wood could surmount all of the jurisdictional obstacles described above, his claims would be independently barred by the equitable doctrine of laches. Mr. Wood's extraordinary delay in filing this suit, which challenges procedures in place for multiple prior elections and asks that the court intervene and modify them in the middle of an on-going election, is inexcusable and bars his claims. Each of the requirements for laches are easily met here: "(1) there was a delay in asserting a right or a claim, (2) the delay was not excusable, and (3) the delay caused [the defendant] undue prejudice." *United States v. Barfield*, 396 F.3d 1144, 1150 (11th Cir. 2005). Federal courts routinely apply laches to bar untimely claims for injunctive relief in election cases. *See, e.g., Sanders v. Dooly Cnty., Ga.*, 245 F.3d 1289, 1291 (11th Cir. 2001) (concluding "that the district court did not abuse its discretion in deeming the claims seeking injunctive relief to be laches-barred" in elections context).

As the court found in *Wood I*, Mr. Wood's delay in challenging the Signature Matching Bulletin was inexcusable given that those claims were ripe the moment the settlement agreement was signed in March 2020, and, certainly, when the Bulletin was issued in May 2020. *See Wood I,* 2020 WL 6817513 at *7  (finding Wood "could have, and should have, filed [his] constitutional challenge much sooner than [he] did, and certainly not two weeks *after* the General Election"); *see also* Pearson Tr. 43:2-

16

18 (making same finding as to Ballot Processing and Dominion Machine claims). If those claims were too late then, they are certainly too late now, several weeks later and in the middle of an election.[5] *See Twelfth Congressional Dist.*, No. 1:20-cv-00180-JRH-BKE (S.D. Ga Dec. 17, 2020), ECF No. 31.

Moreover, Mr. Wood seeks to challenge decisions related to voting machines that have been heavily litigated for years, including well before the ongoing run-off election. *See, e.g.*, *Curling v. Raffensperger*, No. 1:17-CV-2989-AT, 2020 WL 5994029 (N.D. Ga. Oct. 11, 2020). The same is also true with regard to Mr. Wood's Ballot Processing and Drop Box Rule claims, both of which challenge procedures that have been in place for multiple elections, and are already being applied again in the current run-off election.[6] Pearson Tr. at 43:2-18; *Twelfth Congressional Dist.*, No. 1:20-cv-00180-JRH-BKE (S.D. Ga Dec. 17, 2020), ECF No. 31. Yet, Mr. Wood waited until well past the eleventh hour to challenge the processes of which he now complains. The delay is inexcusable and clearly prejudices not just Defendants and

---

[5] There is also no adequate reason for Mr. Wood's failure to assert his Guarantee Clause claim in his first suit, let alone before early voting for the January 2021 runoff began. Failure to bring this claim in a timely manner also subjects it to laches.
[6] Notably, the Eleventh Circuit stayed even minor changes concerning the use of paper poll books on Election Day and ordered by the District Court weeks in advance, finding that the challenge came too late. *See Curling v. Sec'y of State for Georgia*, No. 20-13730-RR, 2020 WL 6301847 (11th Cir. Oct. 24, 2020).

17

Proposed Intervenors, but hundreds of thousands of Georgia voters. The doctrine of laches accordingly bars his claims.

> ### D.    The Eleventh Amendment bars this Court from exercising jurisdiction.

Even if Mr. Wood's claims were not otherwise barred, the Eleventh Amendment independently prevents this Court's exercise of judicial power to issue the relief requested. A federal court cannot order state officials to conform their conduct to state law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Mr. Wood is explicit that he seeks an order from this Court "prohibit[ing] Defendants from utilizing in the runoff the unconstitutional procedures set forth above." Compl. ¶ 76. While he attempts to couch his complaint in the language of federal constitutional claims, Mr. Wood ultimately asks the Court to compel election authorities to do what he believes Georgia law requires. As Judge Hall in the Southern District recently found when evaluating nearly identical claims, federal courts cannot entertain such a request for injunctive relief requiring state officials to comply with state law. *Twelfth Congressional Dist.*, No. 1:20-cv-00180-JRH-BKE (S.D. Ga Dec. 17, 2020), ECF No. 31.

As the Supreme Court explained decades ago in *Pennhurst*, "the principles of federalism that underlie the Eleventh Amendment" prohibit federal courts from granting "relief against state officials on the basis of state law, whether prospective or

18

retroactive." 465 U.S. at 106; *see also id.* at 117 ("[A] federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when . . . the relief sought and ordered has an impact directly on the State itself."). This is true even where, as here, state law claims are cloaked in federal causes of action. *See, e.g.*, *Balsam v. Sec'y of State*, 607 F. App'x 177, 183–84 (3d Cir. 2015); *see also Massey v. Coon*, No. 87-3768, 1989 WL 884, at *2 (9th Cir. Jan. 3, 1989) (affirming dismissal where "on its face the complaint states a claim under the due process and equal protection clauses . . . [but] these constitutional claims are entirely based on the failure of defendants to conform to state law"); *Six v. Newsom*, 462 F. Supp. 3d 1060, 1073 (C.D. Cal. 2020) (denying relief where Fifth and Fourteenth Amendment claims were predicated on violations of state law); *Acosta v. Democratic City Comm.*, 288 F. Supp. 3d 597, 626 (E.D. Pa. 2018) ("Even when voters attempt to 'tie their state law claims into their federal claims,' the Eleventh Amendment bars the state law claims." (quoting *Balsam*, 607 F. App'x at 183)); *Thompson v. Alabama*, No. 2:16-CV-783-WKW, 2017 WL 3223915, at *8 (M.D. Ala. July 28, 2017) (denying injunction where constitutional claims rested on premise that state officials were violating state law).

Here, all three of Mr. Wood's causes of action are nothing more than state law concerns masquerading as federal claims. He repeatedly notes that his true concern is his (mistaken) belief that Defendants' actions conflict with the Georgia Election

19

Code. *See, e.g.*, Compl. ¶¶ 9-11. But this is not how the Constitution works. *See, e.g.*, *Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1062 (7th Cir. 2020) ("A violation of state law does not . . . 'transgress against the Constitution.'" (quoting *Kasper v. Bd. of Election Comm'rs*, 814 F.2d 332, 342 (7th Cir. 1987))); *Martinez v. Colon*, 54 F.3d 980, 989 (1st Cir. 1995) ("[T]he Constitution is not an empty ledger awaiting the entry of an aggrieved litigant's recitation of alleged state law violations . . ."). At bottom, Mr. Wood's claims concern state court violations—no more, no less.

### E.   The Complaint should be dismissed for failure to state a claim.

Even if this Court had jurisdiction to consider his claims, Mr. Wood's Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

### 1.   Mr. Wood's voting machine claims are not plausible.

Under the Federal Rules, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While Rule 8 "does not require 'detailed factual allegations,' [] it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). The shortcomings in the Complaint are particularly stark considering Rule 9(b), which applies to allegations

of fraud. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

Mr. Wood fails to meet the standards of Rule 8, much less Rule 9(b). His theory is that Dominion was founded exclusively "to created [sic] systemic fraud" to ensure election-rigging so that "Venezuelan dictator Hugo Chavez never lost another election." *Id.* ¶¶ 56, 63. Yet, Mr. Wood pleads neither plausible facts nor plausible theories to suggest the voting machines have provided or are certain to provide fraudulent results in Georgia. The Supreme Court has instructed that "[d]etermining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. It would defy both experience and common sense to accept Mr. Wood's theory that widespread fraud occurred during the most scrutinized election in modern history, based on the allegations at bar, and therefore will occur again in the ongoing run-off. In fact, these very allegations have been uniformly dismissed in every court they have been raised, including this one. *See* Pearson Tr. 43:25-44:2; *Bowyer v. Ducey*, No. CV-20-02321-PHX-DJH (D. Ariz. Dec. 9, 2020), ECF No. 84; *Feehan v. Wis. Elections Comm'n*, No. 20-cv-1771-pp (E.D. Wis. Dec. 9, 2020), ECF No. 83; *King v. Whitmer*, No. 20-13134 (E.D. Mich. Dec. 7, 2020), ECF No. 62. This Court need not and should not credit Mr. Wood's specious

21

inferences and conclusory allegations. His claims related to voting machines should be dismissed.

### 2.      Mr. Wood has not pleaded an equal protection claim.

Mr. Wood has also not stated cognizable equal protection claims. Count I alleges that the challenged provisions "dilute[e] the Plaintiff's vote" based on a vote-dilution-by-fraudulent voting theory that has been repeatedly rejected by the federal courts as a cognizable equal protection claim. Compl. ¶ 75. These courts include *the Eleventh Circuit in a case brought by this very plaintiff* on the same theory mere weeks ago. In affirming the district court's finding that Mr. Wood lacked jurisdiction to pursue an equal protection claim on this theory, that Court explained that vote dilution is a viable basis for federal claims only in certain contexts, "it requires a point of comparison" as in racial gerrymandering and malapportionment contexts. *Wood II*, 2020 WL 7094866, at *4-5. "By contrast, 'no single voter is specifically disadvantaged' if a vote is counted improperly, even if the error might have a 'mathematical impact on the final tally and thus on the proportional effect of every vote." *Id.* (quoting *Bognet*, 980 F.3d at 356 (quotation marks omitted)). It is frankly astonishing that Mr. Wood attempts to pursue the same theory again, here.

Just as unsustainable is Mr. Wood's suggestion that the promulgation of uniform elections procedures with which he disagrees (purportedly because they

deviate from state law) amounts to a federal equal protection violation. The Third

Circuit recently rejected a markedly similar claim, explaining:

> Plaintiffs advance an Equal Protection Clause argument based solely on state officials' alleged violation of state law that does not cause unequal treatment. . . . [I]f dilution of lawfully cast ballots by the "unlawful" counting of invalidly cast ballots were a true equal-protection problem, then it would transform every violation of state election law (and, actually, every violation of every law) into a potential federal equal-protection claim requiring scrutiny of the government's 'interest' in failing to do more to stop the illegal activity. *That is not how the Equal Protection Clause works.*

*Bognet*, 980 F.3d at 355 (citations and quotation marks omitted; emphasis added). The

same reasoning applies here.

### 3.    Mr. Wood has not pleaded a due process claim.

In Count II, Mr. Wood attempts to package his theories of purported illegal

voting under Georgia law and fraud into a substantive due process theory, alleging

that the challenged procedures were so defective that they have rendered Georgia's

voting system "fundamental[ly] unfair[]" in violation of Mr. Wood's substantive due

process rights. *See* Compl. ¶¶ 79-84. But these claims, as well.

It is well-settled that "[f]ederal courts should not 'involve themselves

in garden variety election disputes.'" *Serpentfoot v. Rome City Comm'n*, No. 4:09-

CV-0187-HLM, 2010 WL 11507239, at *16 (N.D. Ga. Mar. 3, 2010) (quoting *Curry

v. Baker*, 802 F.2d 1302, 1315 (11th Cir. 1986) (noting "[o]nly in extraordinary

23

circumstances will a challenge to a state election rise to the level of a constitutional deprivation"). For the substantive Due Process Clause to be implicated, the situation "must go well beyond the ordinary dispute over the counting and marking of ballots." *Curry*, 802 F.2d at 1315.

As Judge Grimberg observed in *Wood I* based on much of the (exact) same evidence, the allegedly illegal votes and supposedly improvident behavior, even if true, amount to little more than these types of "garden variety" disputes that simply do not rise to constitutional violations. *Wood I*, No. 1:20-cv-04651-SDG, ECF No. 54 at 36, *aff'd by Wood II*, 2020 WL 7094866, at *7; *see also, e.g.*, *Serpentfoot v. Rome City Comm'n*, 426 F. App'x 884, 887 (11th Cir. 2011) ("[Plaintiff's] allegations show, at most, a single instance of vote dilution and not an election process that has 'reached the point of patent and fundamental unfairness' indicative of a due process violation.") (quoting *Roe v. Alabama*, 43 F.3d 574, 580 (11th Cir. 1995)).[7]

Citizens are not constitutionally entitled to a completely error-free election. The sort of unconstitutional irregularity that courts have entertained under the Due Process

---

[7] In contrast, it would violate the constitutional rights of the over one million voters who relied on many of the procedures challenged now, to suddenly find them unlawful and suspend them after voting has begun. *See e.g.*, *Griffin v. Burns*, 570 F.2d 1065, 1079 (1st Cir. 1978) (finding disenfranchisement of electorate who voted by absentee ballot a violation of substantive due process).

24

Clause consists of widescale disenfranchisement. *See, e.g.*, *Bennett v. Yoshina*, <u>140 F.3d 1218, 1226-27</u> (9th Cir. 1998). But Mr. Wood's Complaint does not allege disenfranchisement at all. His due process claim must be dismissed.

### 4.    Mr. Wood fails to state a Guarantee Clause claim.

As discussed above, Mr. Wood's Guarantee Clause claim is nonjusticiable. *See supra* at 14. But even if that were not the case, a violation of the Guarantee Clause arises when there are existential threats to the "republican form of government." *Vos*, <u>966 F.3d at 590</u>. Mr. Wood's claims do not arise to this level. At most, he raises "garden variety" elections issues of the sort that federal courts do not involve themselves in. *See supra* 23-24. Accordingly, Plaintiff fails to state a Guarantee Clause claim as well.

### V.    CONCLUSION

For the foregoing reasons, Proposed Intervenor-Defendants respectfully request that the Court dismiss Plaintiff's Complaint in its entirety with prejudice.

[signature block on following page]

Dated: December 21, 2020.    Respectfully submitted,

**Adam M. Sparks**
Halsey G. Knapp, Jr.
Georgia Bar No. 425320
Joyce Gist Lewis
Georgia Bar No. 296261
Susan P. Coppedge
Georgia Bar No. 187251
Adam M. Sparks
Georgia Bar No. 341578
KREVOLIN AND HORST, LLC
One Atlantic Center
1201 W. Peachtree Street, NW, Ste. 3250
Atlanta, GA 30309
Telephone: (404) 888-9700
Facsimile: (404) 888-9577
hknapp@khlawfirm.com
jlewis@khlawfirm.com
coppedge@khlawfirm.com
sparks@khlawfirm.com

Marc E. Elias*
Amanda R. Callais*
Henry J. Brewster*
PERKINS COIE LLP
700 Thirteenth Street NW, Suite 800
Washington, DC 20005
Telephone: (202) 654-6200
melias@perkinscoie.com
acallais@perkinscoie.com
hbrewster@perkinscoie.com

Heath L. Hyatt*
Steven Beale*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900

26

Seattle, Washington 98101
Telephone: (206) 359-8000
hhyatt@perkinscoie.com
sbeale@perkinscoie.com

Jessica R. Frenkel*
PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400
Denver, CO 80202
Telephone: (303) 291-2300
jfrenkel@perkinscoie.com

*Counsel for Proposed Intervenor-Defendants*

**Pro Hac Vice Application Forthcoming*

27

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

L. LIN WOOD, JR., individually;

      Plaintiff,

v.

BRAD RAFFENSPERGER, in his official capacity as Secretary of State of the State of Georgia; REBECCA N. SULLIVAN, in her official capacity as Vice Chair of the Georgia State Election Board; DAVID J. WORLEY, in his official capacity as a Member of the Georgia State Election Board; MATTHEW MASHBURN, in his official capacity as a Member of the Georgia State Election Board; and ANH LE, in her official capacity as a Member of the Georgia State Election Board,

      Defendants.

CIVIL ACTION FILE NO.
1:20-cv-05155-TCB

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of L.R. 5.1, using font type of Times New Roman and a point size of 14.

Dated: December 21, 2020.             **Adam M. Sparks**
                                      *Counsel for Proposed Intervenor-*
                                      *Defendants*