**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| L. LIN WOOD, JR., individually, <br><br>       Plaintiff, <br><br> v. <br><br> BRAD RAFFENSPERGER, in his official capacity as Secretary of State of the State of Georgia, REBECCA N. SULLIVAN, in her official capacity as Vice Chair of the Georgia State Election Board; DAVID J. WORLEY, in his official capacity as a member of the Georgia State Election Board, MATTHEW MASHBURN, in his official capacity as a member of the Georgia State Election Board, and ANH LE, in her official capacity as a member of the Georgia State Election Board, <br><br>       Defendants, <br><br> and <br><br> DEMOCRATIC PARTY OF GEORGIA, INC. and DSCC, <br><br>       Intervenor-Defendants. | CIVIL ACTION FILE NO. <br><br> 1:20-cv-05155-TCB |

**INTERVENOR-DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S EMERGENCY MOTION FOR INJUNCTIVE RELIEF**

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................1

II.  BACKGROUND .....................................................................................2

    A.   The challenged election procedures. ......................................................3

    B.   Courts have repeatedly rejected challenges to Georgia's election procedures like Wood's claims here. ...................................................5

    C.   Wood files this lawsuit in the middle of Georgia's runoff election, even though his arguments have already been rejected by multiple courts. ...............................................................................................7

III. LEGAL STANDARD ...........................................................................10

IV.  ARGUMENT.........................................................................................10

    A.   Wood lacks standing and his claims are barred by threshold issues...10

    B.   Wood is not likely to succeed on the merits of his claims. .................13

        1.   Wood is not likely to succeed on his Equal Protection claim. .13

        2.   Wood cannot succeed on his Due Process claim.....................16

        3.   Wood cannot succeed on his Guarantee Clause claim. ............19

    C.   Wood does not establish irreparable harm. .........................................19

    D.   The balance of the equities and the public interest weigh against a preliminary injunction. ......................................................................21

V.   CONCLUSION.....................................................................................24

# I.   INTRODUCTION

In an argument more fitting for Orwell, Plaintiff L. Lin Wood, Jr. asks this Court to enter a preliminary injunction in the middle of Georgia's runoff election for its two U.S. Senate seats because (he claims) the state's manner of ensuring that *all* Georgia voters can exercise their fundamental right to vote somehow deprives him of *his* right to vote. But courts around the country—including this Court and the Eleventh Circuit when evaluating identical claims in an earlier action involving Wood—have already rejected the very legal arguments and challenges Wood (again) raises here. *See Wood v. Raffensperger*, No. 1:20-CV-04651-SDG, 2020 WL 6817513, at *3 (N.D. Ga. Nov. 20, 2020) ("*Wood I*"), *aff'd*, *Wood v. Raffensperger*, No. 20-14418, 2020 WL 7094866, at *5 (11th Cir. Dec. 5, 2020) ("*Wood II*"), *petition for cert. filed*, No. 20-799 (U.S. Dec. 8, 2020); *Pearson v. Kemp*, No. 1:20-cv-04809-TCB (N.D. Ga. Dec. 7, 2020), ECF No. 74; *Twelfth Congressional Dist. Republican Comm. v. Raffensperger*, No. 1:20-cv-00180-JRH-BKE (S.D. Ga. Dec. 17, 2020), ECF No. 47; *Ga. Republican Party v. Raffensperger*, No. 1:20-cv-05018-ELR (N.D. Ga. Dec. 17, 2020), ECF No. 46, *stay denied*, No. 20-14741-RR (11th Cir. Dec. 20, 2020). The fact of the matter is that Wood *can* vote and his vote will be valued just as much as all other Georgians' votes; he does not claim otherwise in his papers, and he certainly offers no reason for this Court to find differently.

Rather, just like his earlier failed attempts, Wood's emergency motion for injunctive relief should be denied for multiple, independent reasons. First, he lacks Article III standing to bring his claims, which in any event are barred by laches, estoppel, and the Eleventh Amendment.[1] But even if he could get past these hurdles, his motion must still be denied because he fails to justify the extraordinary relief he seeks. Wood's claims are meritless, he cannot show any concrete (much less irreparable) harm, and the balance of harms and public interest—particularly since he seeks relief in the middle of an on-going election, which the Supreme Court and Eleventh Circuit have repeatedly cautioned against—tip sharply against him. For these reasons, Wood's motion should be denied.

## II.   BACKGROUND

At this point, this Court is quite familiar with Georgia's signature matching process, absentee ballot processing practices, voting machines, and Georgia's drop box rules, having dealt with them most recently in *Pearson v. Kemp*, and having reviewed the extensive backgrounds set out in Intervenor-Defendants' Motion to Intervene, ECF No. 13 at 2–6, and Brief in Support of Motion to Dismiss, ECF No.

---

[1] Intervenor-Defendants have fully briefed these issues in support of their motion to dismiss, filed on December 21 and docketed by the Court the very next day. ECF Nos. 16, 16-1. For purposes of judicial economy, they incorporate those arguments by reference here.

16-1 at 2–11. For the sake of brevity, Intervenor-Defendants revisit them only briefly here to provide context, focusing the bulk of this discussion on pertinent litigation surrounding these challenged practices and Wood's current motion.

## A.    The challenged election procedures.

In the leadup to Georgia's 2020 elections, Defendants adopted and promulgated various rules and guidelines related to absentee ballots.[2] At issue in this lawsuit are three specific rules or guidance: (1) a May 1, 2020 Official Election Bulletin concerning signature matching (the "Signature Matching Bulletin"); (2) Rule 183-1-14-0.8-.14 (the "Drop Box Rule"), which the State Election Board first adopted on February 28, 2020 and then readopted with minor variations on July 1 and November 23; and (3) Rule 183-1-14-0.9-.15 (the "Ballot Processing Rule"), which Wood alleges was first adopted "on an emergency basis on or about May 18, 2020." Compl. ¶ 30.

The Signature Matching Bulletin provides statewide guidance on the procedures for absentee ballot envelopes, designed to increase uniformity in signature matching determinations. It is the product of a March 6, 2020 settlement

---

[2] The Rules at issue can be found on the Secretary's website. *See Rules and Rulemaking of the State Election Board*, Ga. Sec'y of State, https://sos.ga.gov/index.php/elections/state_election_board (follow "Rules and Rulemaking of the State Election Board" hyperlink) (last visited Dec. 23, 2020).

agreement (the "Settlement Agreement"), resulting from a lawsuit brought by Intervenor-Defendants, among others, against Defendant Brad Raffensperger, Georgia's Secretary of State (the "Secretary"), and members of the State Election Board, in *Democratic Party of Georgia, Inc. v. Raffensperger*, No. 1:19-cv-5028-WMR (N.D. Ga. Nov. 6, 2019), which challenged Georgia's signature matching laws under the First and Fourteenth Amendments to the U.S. Constitution on the grounds that they burdened the right to vote by arbitrarily and unjustifiably disenfranchising lawful Georgia voters. After several weeks of arms-length negotiations, the parties publicly filed a settlement agreement with the Court on March 6, 2020. Subsequently, on May 1, the Secretary issued the Signature Matching Bulletin, which required review of allegedly mismatched signatures by two additional registrars, deputy registrars, or absentee ballot clerks. It also required counties to continue to verify absentee voters' identities by comparing signatures as required by Georgia law. *See* Ex. A, at 1.

The Drop Box Rule allows county election officials "to establish one or more drop box locations as a means for absentee by mail electors to deliver their ballots to the county registrars." SEB Rule 183-1-14-0.8-.14(1). And the Ballot Processing Rule simply permits county officials to open and process absentee ballots well before

4

Election Day, enabling faster tabulation of ballots on Election Day. SEB Rule 183-1-14-0.9-.15. Wood also challenges Georgia's use of Dominion voting machines.

All three provisions as well as the challenged voting machines were in place for Georgia's June 9 primary and August 11 primary runoff elections, as well as the November 3 general and special U.S. Senate elections.

**B.      Courts have repeatedly rejected challenges to Georgia's election procedures like Wood's claims here.**

When it became clear that President-elect Biden was likely to win Georgia's electoral votes in the 2020 presidential election, Republican litigants, including Wood, filed multiple lawsuits to overturn the results of the election. Those stymied efforts have now turned into challenges focused on Georgia's runoff election. Courts have resoundingly rejected the legal and factual bases for these challenges.

*First*, on November 13, 2020, Wood sued the same Defendants named in this case, raising the same belated challenges to the Signature Matching Bulletin that he asserts here. *Wood I*, 2020 WL 6817513, at *3. Judge Grimberg denied Wood's motion for injunctive relief, finding Wood lacked standing. *See id.* at *4–5. He also held that Wood had not shown a substantial likelihood of success on the merits on any of his flawed legal arguments, his case was barred by laches, and the equities weighed heavily against Wood's late-filed request. *See id.* at *8–10. The Eleventh Circuit affirmed. *See Wood II*, 2020 WL 7094866.

*Second*, on November 25, 2020, Wood (again, and this time as counsel of record) brought a lawsuit against the named Defendants here and Georgia Governor Brian Kemp on behalf of seven individual plaintiffs. *See Pearson*, No. 1:20-cv-04809-TCB, ECF No. 1. The plaintiffs alleged a sprawling global conspiracy based on much of the same "evidence" and theories that Wood now attaches to his motion for emergency injunctive relief. This Court dismissed the case for lack of standing, jurisdiction, and delay. *See* Tr. of Motions Hearing at 42:9–17, *Pearson*, No. 1:20-CV-4809-TCB ("*Pearson* Transcript") (attached as Ex. A to Intervenor-Defendants' motion to dismiss), ECF No. 13-4. The Court was not alone in its holding, as identical lawsuits brought by Wood around the country based on similarly unsubstantiated evidence and flawed legal theories have been uniformly rejected. *See King v. Whitmer*, No. CV 20-13134, 2020 WL 7134198 (E.D. Mich. Dec. 7, 2020); *Bowyer v. Ducey*, No. CV-20-02321-PHX-DJH, 2020 WL 7238261 (D. Ariz. Dec. 9, 2020); *Feehan v. Wisconsin Elections Comm'n*, No. 20-CV-1771-PP, 2020 WL 7250219 (E.D. Wis. Dec. 9, 2020).

*Finally*, just last week, two Georgia federal district courts dismissed lawsuits seeking to enjoin Georgia's election procedures during the January 5, 2021 runoff election. *See Twelfth Congressional Dist. Republican Comm.*, No. 1:20-cv-00180-JRH-BKE, ECF No. 47; *Ga. Republican Party*, No. 1:20-cv-05018-ELR, ECF No.

46.[3] Those lawsuits challenged the same procedures that Wood now asks this Court to enjoin. *See Twelfth Congressional Dist. Republican Comm.*, No. 1:20-cv-00180-JRH-BKE, ECF No. 1 (challenging drop boxes, absentee ballot processing, and signature match); *Ga. Republican Party*, No. 1:20-cv-05018-ELR, ECF No. 1 (challenging signature verification). Both courts held that the plaintiffs lacked standing to bring their claims, a holding which the Eleventh Circuit swiftly affirmed in the *Ga. Republican Party* case.

**C.      Wood files this lawsuit in the middle of Georgia's runoff election, even though his arguments have already been rejected by multiple courts.**

On November 3, Georgia held its general and special U.S. Senate elections. Georgia requires a winning candidate to receive "a majority of the votes cast." O.C.G.A. § 21-2-501(a)(1). Because no candidate for either seat won a majority, they will be filled in a runoff. That election will culminate on January 5, 2021, but it is already well underway. Advance voting began on December 14. As of the day Wood filed his Complaint (December 18), hundreds of thousands of absentee ballots had already been returned and signatures matched. *See* Georgia Early Voting Statistics—2021 Senate Run-Off Election, U.S. Elections Project,

---

[3] A third federal court dismissed a lawsuit that challenged Georgia voters who have registered since the November election. *See Ga. Republican Party v. Raffensperger*, No. 2:20-cv-00135-LGW-BWC (S.D. Ga. Dec. 18, 2020), ECF No. 31.

https://electproject.github.io/Early-Vote-2020G/GA_RO.html (Dec. 18, 2020). And as of December 21, more than 1.4 million Georgians have already voted, "a number that rival[ed] the turnout at this point in the November election." Michelle Ye Hee et al., *More than 1.4 million Georgians have already voted in the Senate runoffs, rivaling general election turnout*, Wash. Post (Dec. 21, 2020).

Yet Wood asks this Court—in the midst of this ongoing election—to enter injunctive relief based on claims, evidence, and arguments that have already been considered and rejected by multiple courts. While his precise legal theories are unclear, he appears to challenge the Signature Matching Bulletin, the Drop Box Rule, the Ballot Processing Rule, and Georgia's use of voting machines on the grounds they violate the U.S. Constitution's Equal Protection, Due Process, and Guarantee Clauses. Pl.' Emergency Mot. for Inj. Relief ("Mot."), ECF No. 2, at 21.

Wood also attaches as "evidence" "affidavits, declarations, and/or documentary evidence," Mot. at 2, nearly all of which have been recycled from other cases (including the *Pearson* case) and rejected by those courts or otherwise discredited. Indeed, at least nine "expert" affidavits Wood relies on here were directly rebutted in *Pearson*, with their reliability challenged not only by competing rebuttal reports, but also by a pending *Daubert* motion that explained that all of these "'experts' are wildly unqualified"; offer analyses based on "patently incomplete or

8

faulty data"; do not "disclose the methods [they] employed . . . , error rates, or even how underlying data are obtained"; and in the rare event that a methodology is discernible, "use methods that are not at all standard or trusted in the relevant field[;] and draw conclusions that are nothing more than speculation."[4] *Pearson*, No. 1:20-cv-04809-TCB (N.D. Ga. Dec. 7, 2020), ECF No. 60 at 1. Likewise, Wood again relies on the outlandish affidavit of "Spyder," which numerous news articles have found contains false information about "Spyder's" credentials, and which Wood, of course, fails to disclose to this Court.[5] To the extent that any of this "evidence" is new, it is of the same flavor and unreliable for all the same reasons.

---

[4] Many of these so-called experts had significant rebuttal evidence presented against them in previous litigation on the same exact opinions they offer here. *See, e.g.*, *Pearson*, No. 1:20-cv-4809, ECF No. 62-1 (expert report of Dr. Stephen Ansolabehere rebutting report of Matthew Braynard); *id.* at ECF No. 62-2 (expert report of Dr. Stephen Ansolabehere rebutting report of William Briggs); *id.* at ECF No. 62-3 (expert report of Dr. Jonathan Rodden rebutting reports of Eric Quinnell and Russell Ramsland); *id.* at ECF No. 62-4 (expert report of Dr. Kenneth Mayer rebutting reports of Russell Ramsland and Benjamin Overholt); *id.* at ECF No. 62-5 (expert report of Dr. Jonathan Rodden and William Marble rebutting reports of Eric Quinnell and Stanley Young).

[5] *E.g.*, Emma Brown, Aaron C. Davis, & Alice Crites, *Sidney Powell's secret 'military intelligence expert,' key to fraud claims in election lawsuits, never worked in military intelligence*, Wash. Post (Dec. 11, 2020 4:29 PM), https://www.washingtonpost.com/investigations/sidney-powell-spider-spyder-witness/2020/12/11/0cd567e6-3b2a-11eb-98c4-25dc9f4987e8_story.html. *See also Pearson*, No. 1:20-cv-04809-TCB (N.D. Ga. Dec. 7, 2020), ECF No. 60 at 24–25 (pointing out the numerous reasons that "Spyder" cannot qualify as an expert under *Daubert*).

9

### III.    LEGAL STANDARD

A party seeking a preliminary injunction must establish "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (per curiam). "[A] preliminary injunction is an extraordinary and drastic remedy that should not be granted unless the movant clearly carries its burden of persuasion on each of these prerequisites." *Suntrust Bank v. Houghton Mifflin Co.*, 252 F.3d 1165, 1166 (11th Cir. 2001) (per curiam).

### IV.    ARGUMENT

**A.    Wood lacks standing and his claims are barred by threshold issues.**

At the outset, Wood's request for injunctive relief should be denied because— despite his lengthy assertions otherwise, *see* Mot. at 12–16—he does not have standing. Intervenor-Defendants make extensive arguments on this front in their motion to dismiss, which they incorporate here, *see* ECF No. 16 at 12–14, and which directly counter the various theories set forth by Wood. But, most critically, the very standing theories that Wood posits in his motion were not only squarely rejected by this Court in *Pearson* and Judge Grimberg in *Wood I*, they have also been directly

rejected by the Eleventh Circuit in *Wood II*. Notably, Wood *does not even mention* this adverse authority (much less try to distinguish it), despite the fact that it is directly on point and controlling.

In particular, the Eleventh Circuit directly rejected Wood's reliance on authorities such as *Baker v. Carr*, 82 S. Ct. 691, 703–04 (1962), for standing, explaining that "to be sure, vote dilution can be a basis for standing," "[b]ut it requires a point of comparison[,]" such as exists "in the racial gerrymandering and malapportionment contexts . . . when voters are harmed compared to 'irrationally favored' voters from other districts." *Wood II*, 2020 WL 7094866, at *5. In contrast, it does not exist here because "'no single voter is specifically disadvantaged' if a vote is counted improperly, even if the error might have a 'mathematical impact on the final tally and thus on the proportional effect of every vote.'" *Id.* at *5 (quoting *Bognet v. Sec'y Commonwealth of Pa.*, 980 F.3d 336, 356 (3rd Cir. Nov. 13, 2020)).

Likewise, the Eleventh Circuit specifically informed Wood that he could not rely on *Roe v. Alabama*, 43 F.3d 574, 581 (11th Cir. 1995), as a basis for standing because, "no party raised and we did not address standing in *Roe*, so that precedent provides no basis for Wood to establish standing." *Wood II*, 2020 WL 7094866, at *5. Yet he brazenly attempts to do so here and steer this Court astray. *See* Mot. ¶ 12. The other cases that Wood cites either fail because they, like *Baker v. Carr*, are

11

distinguishable cases concerning vote dilution,[6] or because they concern voters who experienced actual infringements on their right to vote, which Wood has neither suffered nor even alleged.[7]

In addition to Wood's lack of standing, his claims are also barred by laches, estoppel, and the Eleventh Amendment. *See* ECF No. 16 at 12–14. And though Wood again fails to mention these bars in his motion, other Courts have found the same on precisely these claims. *See, e.g.*, *Wood I*, 2020 WL 6817513, at *7 (denying motion for TRO where "Wood could have, and should have, filed his constitutional challenge much sooner than he did, and certainly not two weeks *after* the General Election") (emphasis original); *Twelfth Congressional Dist. Republican Comm.*, No.

---

[6] *See* Mot. at 13–16 (relying on *Reynolds v. Sims*, 377 U.S. 533, 568 (1964); *Baker v. Reg'l High Sch. Dist. No. 5*, 520 F.2d 799, 801 n.6 (2d Cir. 1975); *George v. Haslam*, 112 F. Supp. 3d 700, 709 (M.D. Tenn. 2015)).

[7] *See* Mot. at 13–16 (relying on *Gray v. Sanders*, 372 U.S. 368, 375 (1963); *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1351 (11th Cir. 2009); *Crawford v. Marion Cty. Elec. Bd.*, 472 F.3d 949, 952 (7th Cir. 2007); *McLain v. Meier*, 851 F.2d 1045, 1048 (8th Cir. 1988); *Fla. State Conf. of the NAACP v. Browning*, 569 F. Supp. 2d 1237, 1251 (N.D. Fla. 2008); *Martin v. Kemp*, 341 F. Supp. 3d 1326, 1333 n.5 (N.D. Ga. 2018); *New Ga. Project v. Raffensperger*, 1:20-CV-01986-ELR, 2020 WL 5200930, at *8 (N.D. Ga. Aug. 31, 2020); *Middleton v. Andino*, Civil Action No. 3:20-cv-01730-JMC, 2020 WL 5591590, at *13–14 (D.S.C. Sept. 18, 2020); *Citizens for Legislative Choice v. Miller*, 993 F. Supp. 1041, 1044–45 (E.D. Mich. 1998)). Notably, the Eleventh Circuit also specifically distinguished *Common Cause v. Billups*, explaining that it too did not provide a basis for standing for Wood. *Wood II*, 2020 WL 7094866, at *5.

1:20-cv-00180-JRH-BKE, ECF No. 47 (dismissing claims with prejudice based in part on 11th Amendment bar).

Without standing, and given the other threshold bars that apply here, Wood cannot seek relief—injunctive or otherwise—from this Court and his claims should be dismissed and his request for injunctive relief denied.

**B.    Wood is not likely to succeed on the merits of his claims.**

Even if Wood could overcome these threshold issues (and he cannot), he is unlikely to succeed on the merits of his claims. This factor, alone, is dispositive.

### 1.    Wood is not likely to succeed on his Equal Protection claim.

Wood is unlikely to succeed on the merits of his Equal Protection claim because he fails to demonstrate any burden on his (or anyone else's) right to vote or any disparate treatment of voters.[8]

Wood asserts that the Settlement Agreement (and Signature Matching Bulletin) has led to "an arbitrary, disparate, and ad hoc process" for ballot

---

[8] Though it is not entirely clear why, Wood's Equal Protection claim includes extensive discussion of burdens on the right to vote. *See* Mot. at 20–22. This is irrelevant, as he does not allege any such burden. Nor does Wood offer any evidence that the Settlement Agreement disenfranchised any voter, created obstacles to voting, or resulted in any lawfully cast ballot not being counted. Rather, the Settlement Agreement helped *protect* the right to vote by occasioning the implementation of uniform signature match protocols. It logically could not impede Wood's right to vote or anyone else's.

13

processing. Mot. at 23. But to sustain an Equal Protection claim, a plaintiff must allege that similarly situated voters are treated differently.[9] *See, e.g.*, *Obama for Am. v. Husted*, 697 F.3d 423, 428 (6th Cir. 2012) (Equal Protection Clause applies when state classifies voters in disparate ways). Wood, however, does not allege that he or any other voter in Georgia is being treated differently from similarly situated voters; rather, he alleges that the purported disparate treatment is in processing absentee ballots as prescribed in the Settlement Agreement which, he complains, is different than what the Election Code requires. *See* Mot. at 23 ("The result [of the Settlement Agreement] is that absentee ballots have been processed differently by County Officials than the process created by the Georgia Legislature and set forth in the Georgia Election Code."). But this is not an Equal Protection violation. *See Husted*, 697 F.3d at 428. Nor could it be, as the process about which Wood complains, admittedly, was provided in uniform, statewide guidance. *See* Compl. ¶ 18 (admitting that Settlement Agreement applies to all "County registrars and absentee ballot clerks"). As the Third Circuit recently explained:

> . . . Plaintiffs advance an Equal Protection Clause argument based solely on state officials' alleged violation of state law that does not cause unequal treatment. And if dilution of lawfully cast ballots by the "unlawful" counting of invalidly cast ballots were a true equal-protection problem, then it would transform every violation of state

---

[9] Curiously, Wood does not articulate this version of his Equal Protection Claim in his Complaint; rather, in his Complaint he relies on a theory of vote dilution.

14

> election law (and, actually, every violation of every law) into a potential federal equal-protection claim requiring scrutiny of the government's 'interest' in failing to do more to stop the illegal activity. That is not how the Equal Protection Clause works.

*Bognet*, 980 F.3d at 355 (internal citations and quotations omitted).

Wood's Drop Box, Ballot Processing Rule, and Dominion machine allegations—which Wood only makes passing reference to—fail for the same reasons. *See* Mot. at 23–24 (asserting Equal Protection violations for statewide, uniform rules based on failure to comport with Georgia law).

Further, even if Wood's allegations could somehow be construed into an Equal Protection claim, the Secretary has a strong interest in the uniform application of state election laws that easily justifies the modest procedures set out in the Settlement Agreement, Drop Box Rule, and Ballot Processing Rule, as well as the uniform use of voting machines. *See, e.g.*, *Brooks v. State Bd. of Elections*, 775 F. Supp. 1470, 1488 (S.D. Ga. 1989), *aff'd*, 498 U.S. 916 (1990) ("The state's overriding independent, legitimate interest in maintaining a uniform election procedure is clearly shown."); *Texas League of United Latin Am. Citizens v. Hughs*, 978 F.3d 136, 149 (5th Cir. 2020) ("[T]he Secretary has articulated important state interests in ensuring election uniformity . . . .").

15

Accordingly, Wood has no cognizable Equal Protection violation and he cannot succeed on the merits of this claim.[10]

### 2.   Wood cannot succeed on his Due Process claim.

Wood makes a half-hearted, three-paragraph attempt to repackage his allegations into a due process violation. *See* Mot. at 24–25. That effort similarly fails.

Most importantly, Wood fails to mention that, just a few weeks ago, another judge in this District—considering virtually identical substantive due process claims about Georgia's signature match regime—found that Wood's allegations of "fundamental unfairness" and "speculat[ion] as to wide-spread impropriety" amounted to no more than "'garden variety' election dispute[s]" and, as such, failed to establish a viable substantive due process claim. *Wood I*, 2020 WL 6817513, at *12, *aff'd*, *Wood II*, 2020 WL 7094866. The same is true here.

"Federal courts should not 'involve themselves in garden variety election disputes.'" *Serpentfoot v. Rome City Comm'n*, No. 4:09-CV-0187-HLM, 2010 WL

---

[10] Wood specifically does *not* pursue a vote dilution theory under the Equal Protection Clause in his motion, so it cannot serve as a basis for emergency injunctive relief. *See Marshall v. United States*, 514 F. App'x 936, 938 (11th Cir. 2013) (declining to entertain claim that could have been but was not raised in pertinent motion). Nevertheless, to the extent Wood attempts to rely on the theory going forward, the claim fails because, as set out in Intervenor-Defendants' motion to dismiss, ECF No. 16 at 12–13, vote dilution in this context is not a cognizable claim. *Bognet*, 980 F.3d at 355.

16

11507239, at *16 (N.D. Ga. Mar. 3, 2010) (citation omitted); *accord Curry v. Baker*, 802 F.2d 1302, 1314 (11th Cir. 1986) ("Only in extraordinary circumstances will a challenge to a state election rise to the level of a constitutional deprivation."); *Wood I*, 2020 WL 6817513, at *12 (same); *see also* ECF No. 16 at 23–24. The sort of unconstitutional irregularity that courts have entertained consists of widescale disenfranchisement, for example of the "entire electorate" when a legally required election does not occur, or where there is "outrageous racial discrimination." *Bennett v. Yoshina*, 140 F.3d 1218, 1226–27 & n.3 (9th Cir. 1998) (quoting *Griffin v. Burns*, 570 F.2d 1065, 1080 (1st Cir. 1978)). Wood's allegations and evidence fall far short of such extreme circumstances—he does not allege disenfranchisement at all, and his due process theory is based on the challenged procedures' alleged *en*franchisement of voters.

Wood also cannot succeed on his procedural due process claim, which asks (1) "whether there exists a liberty or property interest which has been interfered with by the State," and (2) "whether the procedures attendant upon that deprivation were constitutionally sufficient."[11] *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460

---

[11] Intervenor-Defendants address this claim here because Wood has raised it in this motion; however, they note that he has not raised it in his Complaint and, as such, it is wholly improper. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1313 (11th Cir. 2004) (holding that litigant may not raise new legal claim not asserted in complaint in motion for first time).

(1989). Wood does not identify what liberty or property interest he seeks to protect, nor does he allege an infringement or barrier on *his* right to vote. Wood also does not have a liberty or property interest in enforcing state election procedures where, as here, his right to vote is not affected in any way. *See Wood I*, 2020 WL 6817513, at *11 ("[T]he circuit court has expressly declined to extend the strictures of procedural due process to 'a State's election procedures.'" (quoting *New Ga. Project v. Raffensperger*, 976 F.3d 1278, 1282 (11th Cir. 2020)).

Finally, Wood provides no support for his suggestion that a plaintiff has a federal due process claim whenever a state agency issues a rule that allegedly exceeds its authority under state law. *Cf.* Mot. at 25. Nor can he, because that is not how the Due Process Clause works. As courts have recognized for similarly spurious Equal Protection Clause claims, such an argument "would transform every violation of state election law (and, actually, every violation of every law) into a potential federal . . . claim." *Bognet*, 980 F.3d at 355. The Court should decline Wood's invitation to "federalize every jot and tittle of state election law" into a Due Process Clause violation. *Donald J. Trump for President, Inc. v. Sec'y of Pennsylvania*, No. 20-3371, 2020 WL 7012522, at *7 (3d Cir. Nov. 27, 2020).

### 3.    Wood cannot succeed on his Guarantee Clause claim.

Finally, Wood cannot succeed on his Guarantee Clause claim. As Intervenor-Defendants explain in their motion to dismiss, *see* ECF No. 13-3 at 14, 25, the claim is nonjusticiable. *See Rucho v. Common Cause*, 139 S. Ct. 2484, 2506 (2019); *Baker*, 369 U.S. at 217–29. The Guarantee Clause makes the "'guarantee of a republican form of government *to the states*; the bare language of the Clause does not directly confer any rights on individuals vis-à-vis the states.'" *Democratic Party of Wis. v. Vos*, 966 F.3d 581, 589 (7th Cir. 2020) (quoting *Largess v. Supreme Jud. Ct. for the State of Mass.*, 373 F.3d 219, 225 (1st Cir. 2004)). Wood is not the proper party to bring any such claim.

Regardless, Wood's claims and evidence fall far short of what is needed even if he were. A Guarantee Clause violation exists when there are existential threats to the "republican form of government." *Vos*, 966 F.3d at 590. But here, Wood raises *at most* "garden variety" election issues of the sort federal courts do not involve themselves in. *See supra* Section IV, B, 2. For these reasons, he has not shown a likelihood of success on the merits for his Guarantee Clause claim.

### C.    Wood does not establish irreparable harm.

Wood has failed to establish that he will suffer *any* harm, much less irreparable harm, if his requested relief is not granted. As discussed *supra* Section

19

IV, A, and at length in Intervenor-Defendants' motion to dismiss, Wood brings, at best, what can only be characterized as generalized grievances that are not founded in reliable evidence. As such, he has not and cannot demonstrate that he will suffer any particularized harm at all.

Further, Wood's assertions that the challenged procedures will result in fraud are tenuous at best. And the mere unsupported *potential* for fraud is too unsteady a hook on which to hang a finding of imminent, irreparable harm. Indeed, courts (including this one) have recently upheld election procedures similar or identical to the ones Wood now challenges, precisely because the allegations of harm were speculative. *See, e.g.*, *Wood I*, 2020 WL 6817513, at *9–10, *12 (upholding Georgia's signature matching regime and finding that Wood could not show irreparable harm); *Wood II*, 2020 WL 7094866, at *1 (affirming *Wood I*); *Pearson* Transcript 41:15–44:2 (upholding in face of preliminary injunction motion Georgia's signature matching regime, absentee processing, and the use of Dominion voting machines and dismissing case); *Boland v. Raffensperger*, No. 2020-CV-343018, at 5–6 & n.3 (Ga. Super. Ct. Dec. 8, 2020) (dismissing state court contest challenging Georgia's signature matching processes); *Twelfth Congressional Dist. Republican Comm.*, No. 1:20-cv-00180-JRH-BKE, ECF No. 47 (dismissing suit with similar claims). Juxtaposed against the fact that Wood cannot establish *any*

20

injury lies the certain and irreparable harm voters will face as a result of the relief he seeks.[12] *See infra* Section IV, D. With voting for the runoff election well underway, ballots already cast by voters may be thrown into doubt, or worse, voters may become disenfranchised altogether.

**D.     The balance of the equities and the public interest weigh against a preliminary injunction.**

In election cases, courts often consider the remaining two factors—the balance of equities and public interest—together. *See, e.g.*, *Curling v. Kemp*, 334 F. Supp. 3d 1303, 1326 (N.D. Ga. 2018). Both factors militate against Wood's requested relief. Indeed, Wood scarcely addresses these final two factors, aside from paying lip service to the principle that the public has a "strong interest in exercising

---

[12] A purely hypothetical threat of voter fraud also cannot outweigh the burdens that will certainly be imposed if this Court were to award relief. *See League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 246 (4th Cir. 2014) (explaining "states cannot burden the right to vote in order to address dangers that are remote and only 'theoretically imaginable,'" such as threats to "election integrity and fraud protection," with little to no evidence that such dangers exist (*quoting Frank v. Walker*, 17 F. Supp. 3d 837, 850 (E.D. Wis. 2014))). Unproven voter fraud concerns also certainly cannot override the safety of elections during the COVID-19 pandemic. *See, e.g.*, *Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC, 2020 WL 2089813, at *1 (D. Nev. Apr. 30, 2020) ("[The State's] interests in protecting the health and safety of Nevada's voters and to safeguard the voting franchise in light of the COVID-19 pandemic far outweigh any burden . . . premised on a speculative claim of voter fraud.").

the fundamental political right to vote." Mot. at 29. But Wood attempts to dismantle this right, not protect it.

Specifically, he asks this Court to halt the runoff election and enjoin many of Georgia's election procedures. His sweeping request, if granted, could invalidate hundreds of thousands of votes already cast by Georgia voters, through no fault of their own. *See supra* Section II, C. That result would clearly be against the public interest and cause widespread harm to the Defendants, Intervenor-Defendants, and the voters they represent. *See Jones v. Governor of Fla.*, 950 F.3d 795, 831 (11th Cir. 2020) ("The public, of course, has every interest in ensuring that their peers who are eligible to vote are able to do so in every election."); *Scott v. Roberts*, 612 F.3d 1279, 1296 (11th Cir. 2010) ("requir[ing] the state to . . . discard ballots already cast" would be against the public interest); *Bognet*, 2020 WL 6686120, at *1, *8 ("[It is] indisputable in our democratic process: that the lawfully cast vote of every citizen must count.").

As several other Georgia courts have already found, Wood's requested relief is especially inappropriate because he waited until after early voting started to bring this lawsuit—even though the rules and guidance he now challenges have been in place for *months* and for multiple elections. *See Wood I*, 2020 WL 6817513 (denying a request for a temporary injunction related to Georgia's signature matching

22

procedures because laches barred similarly delayed claims); *Pearson* Transcript 43:2–18 ("Plaintiffs waited too late to file this suit . . . . This suit could have been filed months ago."); *Twelfth Congressional Dist. Republican Comm.*, No. 1:20-cv-00180-JRH-BKE, ECF No. 47 (denying injunctive relief because plaintiffs lacked standing, and holding *Purcell* provided an alternate basis for denial); *see also Ga. Republican Party*, No. 2:20-cv-00135-LGW-BWC, ECF No. 31 (denying injunction in part because tardy request for relief could lead to voter confusion and suppression).[13]

Wood's unexplained delay brings this case squarely within the Supreme Court's recent elections jurisprudence, which makes clear that federal courts should refrain from making late-hour changes to state election procedures to avoid voter confusion and undermining voter confidence in the integrity of the electoral process. *See, e.g.*, *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006); *see also Jones*, 950 F.3d at 830 ("[K]nowledge that otherwise-eligible voters were not counted would be harmful to the public's perception of the election's legitimacy." (internal quotation

---

[13] Such an inexcusable delay also weakens any claim to irreparable injury. *See*, *e.g.*, *GTE Corp. v. Williams*, 731 F.2d 676, 679 (10th Cir. 1984) ("A preliminary injunction is sought upon the theory that there is an urgent need for speedy action to protect the plaintiff's rights. By sleeping on its rights a plaintiff demonstrates the lack of need for speedy action . . . ." (quoting *Gillette Co. v. Ed Pinaud, Inc.*, 178 F. Supp. 618, 622 (S.D.N.Y. 1959))).

23

marks omitted)). That principle holds doubly true now—Wood cannot justify this "unprecedented" request for judicial interference in the middle of an ongoing election. *Short v. Brown*, No. 2:18-CV-00421 TLN-KJN, 2018 WL 1941762, at *8 (E.D. Cal. Apr. 25, 2018), *aff'd*, 893 F.3d 671 (9th Cir. 2018) (quoting *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 919 (9th Cir. 2003) (en banc) ("[I]nterference with an election after voting has begun is unprecedented."); *People First of Alabama v. Sec'y of State for Alabama*, 815 F. App'x 505, 516 (11th Cir. 2020) ("[F]ederal courts should not jump in to change the rules on the eve of an election.") (Grant, J., concurring); *Curling v. Raffensperger*, No. 1:17-CV-2989-AT, 2020 WL 5994029, at *50 (N.D. Ga. Oct. 11, 2020) (declining to grant requested relief when "absentee voting has already begun"). Thus, the equities weigh heavily against Wood's requested relief.

## V.   CONCLUSION

For over a week, record numbers of Georgians have justifiably relied on the existing and well-publicized voting procedures, and many voters have used the absentee ballot procedures in all three elections this year. "The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated." *Robinson v. Attorney Gen.*, 957 F.3d 1171, 1178–79 (11th Cir. 2020) (quoting *Ne. Fla. Ch. of Ass'n of Gen. Contractors v. City*

24

*of Jacksonville*, 896 F.2d 1283, 1284 (11th Cir. 1990)). Yet Wood's extraordinary relief would do precisely the opposite, upending the status quo for millions of Georgians. Accordingly, for this reason and for those set forth above, Intervenor-Defendants respectfully request that the Court deny Plaintiff's emergency motion for injunctive relief.

Dated: December 23, 2020.                    Respectfully submitted,

**Adam M. Sparks**
Halsey G. Knapp, Jr.
Georgia Bar No. 425320
Joyce Gist Lewis
Georgia Bar No. 296261
Susan P. Coppedge
Georgia Bar No. 187251
Adam M. Sparks
Georgia Bar No. 341578
KREVOLIN AND HORST, LLC
One Atlantic Center
1201 W. Peachtree Street, NW, Ste. 3250
Atlanta, GA 30309
Telephone: (404) 888-9700
Facsimile: (404) 888-9577
hknapp@khlawfirm.com
jlewis@khlawfirm.com
coppedge@khlawfirm.com
sparks@khlawfirm.com

Marc E. Elias*
Amanda R. Callais*
Henry J. Brewster*
PERKINS COIE LLP
700 Thirteenth Street NW, Suite 800

25

Washington, DC 20005
Telephone: (202) 654-6200
melias@perkinscoie.com
acallais@perkinscoie.com
hbrewster@perkinscoie.com

*Counsel for Intervenor-Defendants*

*\*Pro Hac Vice Application Forthcoming*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| L. LIN WOOD, JR., individually, <br><br>       Plaintiff, <br><br> v. <br><br> BRAD RAFFENSPERGER, in his official capacity as Secretary of State of the State of Georgia, REBECCA N. SULLIVAN, in her official capacity as Vice Chair of the Georgia State Election Board; DAVID J. WORLEY, in his official capacity as a member of the Georgia State Election Board, MATTHEW MASHBURN, in his official capacity as a member of the Georgia State Election Board, and ANH LE, in her official capacity as a member of the Georgia State Election Board, <br><br>       Defendants, <br><br> and <br><br> DEMOCRATIC PARTY OF GEORGIA, INC. and DSCC, <br><br>       Intervenor-Defendants. | CIVIL ACTION FILE NO. <br><br> 1:20-cv-05155-TCB |

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of L.R. 5.1, using font type of Times New Roman and a point size of 14.

Dated: December 23, 2020.                    **<u>Adam M. Sparks</u>**
                                             *Counsel for Intervenor-Defendants*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

L. LIN WOOD, JR., individually,

       Plaintiff,

v.

BRAD RAFFENSPERGER, in his official capacity as Secretary of State of the State of Georgia, REBECCA N. SULLIVAN, in her official capacity as Vice Chair of the Georgia State Election Board; DAVID J. WORLEY, in his official capacity as a member of the Georgia State Election Board, MATTHEW MASHBURN, in his official capacity as a member of the Georgia State Election Board, and ANH LE, in her official capacity as a member of the Georgia State Election Board,

       Defendants,

and

DEMOCRATIC PARTY OF GEORGIA, INC. and DSCC,

       Intervenor-Defendants.

CIVIL ACTION FILE NO.

1:20-cv-05155-TCB

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Dated: December 23, 2020.                    **Adam M. Sparks**
                                              *Counsel for Intervenor-Defendants*