L. LIN WOOD, JR.,

    *Plaintiff,*

    v.

BRAD RAFFENSPERGER, *et al.*,

    *Defendants.*

CIVIL ACTION

FILE NO. 1:20-cv-05155-TCB

## STATE DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR DISCOVERY

Defendants Secretary of State and Chair of the State Election Board Brad Raffensperger, and State Election Board Members David Worley, Rebecca Sullivan, Matthew Mashburn, and Anh Le (collectively, the "State Defendants"), file this response in opposition to Plaintiff's Emergency Motion for Discovery (the "Motion"), [Doc. 3], as directed by the Court. Plaintiff's Motion is due to be denied for the reasons that follow.

Plaintiff styles his Motion as one concerning preservation of evidence but there is, of course, no need for a preservation order regarding the items he seeks as that information is retained pursuant to State law. In truth, Plaintiff's Motion is a simple attempt to avoid the Local Rules of this Court rather than proceeding in the normal course of litigation (even be it an

1

accelerated course of litigation). And even if Plaintiff could show good cause

to do so (and he cannot) the bulk of the information he seeks is in the

possession of non-party counties actively conducting an election. Finally, it is

worth noting that Plaintiff, as counsel of record in *Pearson v. Kemp*, had

already obtained a temporary restraining order quite similar to this Motion—

but rather than pursue discovery of those items, appealed that order granted

in his favor to the Eleventh Circuit, wasting the precious time those plaintiffs

indicated they had.

**ARGUMENT AND CITATION TO AUTHORITY**

**I.**     **The Local Rules of this Court and Eleventh Circuit precedent foreclose discovery while jurisdictional defenses are pending.**

State Defendants object to Plaintiff's Discovery Requests in their

entirety as premature, unenforceable, and invalid.  According to Local Rule

26.2 (A), "[t]he discovery period shall commence **thirty days** after the

appearance of the first defendant **by answer** to the complaint, unless the

parties mutually consent to begin earlier." (emphasis added). Here, only

Defendant-Intervenors have filed an Answer.

Courts in this district have been clear that where, as here, a motion to

dismiss is filed in lieu of an answer, discovery is not available. *See, e.g.*,

*Odion v. Google Inc.*, No. 1:13-CV-03906-SCJ, 2014 WL 12648461, at *3 (N.D.

2

Ga. Apr. 17, 2014). *Odion* involved facts nearly identical to those here and concluded that Local Rule 26.2(A) precluded discovery while motions to dismiss are pending. *See also Crutcher v. CitiMortgage, Inc.*, No. 111CV02699JOFGGB, 2011 WL 13221066, at *2 (N.D. Ga. Oct. 17, 2011) (noting discovery had not commenced given the pendency of motions to dismiss).

While a party may file a motion to waive those local rules, they must demonstrate good cause to do so. Plaintiff has not, and cannot do so in this lawsuit. First, there is no risk of spoliation given current State law. Second, the motion(s) to dismiss raises numerous jurisdictional defenses. As the Eleventh Circuit noted in *Chudasama v. Mazda Motor Corporation*, "facial challenges to the legal sufficiency of the claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should be resolved before discovery begins." 123 F.3d 1353, 1367 (11th Cir. 1997). This is for good reason, if a party proceeds with discovery prior to the Court's ruling on pending motions to dismiss it can encourage abusive discovery, waste scarce judicial resources, and impose unnecessary costs. *Id.* at 1367–68. Indeed, "neither the parties nor the court have any need for discovery before the court rules on the [pending motion to dismiss]." *Id.*

What's more, as raised in State Defendants' motion to dismiss, Plaintiff has not served the State Defendants, which separately forecloses discovery. "[Rule 34] may be utilized only as to a 'party' to the litigation. As yet, no defendant named in the complaint has been served with the summons and complaint, as contemplated by Rule 4, and therefore they are not yet 'parties' to this litigation." *Wilkerson v. Georgia*, No. CV614-041, 2015 WL 5449144, at *1 (S.D. Ga. Sept. 10, 2015).

## II. Relevant election data is retained under existing State law.

Before each election, Ballot Marking Devices ("BMDs") utilize USB drives to load certain election data files onto the BMDs. *See* Declaration of Michael Barnes, ¶ 3, attached hereto as **Exhibit 1**. Those election data files contain blank ballot images for each precinct associated with the BMD for the previous election, the ballot activation codes needed to access each associated ballot, and the audio files associated to the content within the ballot images for visually impaired voters. *Id.* Before a new election occurs, the election data files from the most-recent election must be removed from the BMDs, as the BMDs host only one set of those files at a time. *Id.* at ¶ 4. The removal of election data files does not alter the operational software or source code of the BMDs. *Id.*

4

Separate from the BMDs, scanners are employed to count the paper ballots produced by the BMD and attached printer; those scanners utilize Compact Flash Cards. These Compact Flash Cards contain election files downloaded from the county's election management server before each election—like the files used in the BMD, the files employed with the scanners correspond to the particular election. *Id.* at ¶ 5. There are only a limited number of these cards, so they must be formatted and re-used for each election. *Id.* at ¶ 6. The formatting removes all data previously held by the Compact Flash Cards. However, before the formatting occurs, the results contained in the memory cards are uploaded to the specific county's election management server, and retained. *Id.* Thus, the data is securely stored after each election and before the removal of the data from the Compact Flash Cards.

Finally, the paper ballots on which votes were cast are also retained. In Georgia's BMD System, a voter makes their selection on the BMD which is connected to a printer that produces a paper ballot. That ballot is then taken to a precinct scanner which records the votes contained on the paper ballot and deposits the ballot into a secure box. With respect to absentee-by-mail and provisional ballots, those ballots are similarly counted by a scanner and, like the in-person ballots, are retained.

All of this data is required by Georgia law to be retained, even in the absence of an order granting Plaintiff's Motion. Indeed, Code Section 21-2-500 requires the following information to be stored with the Clerk of Superior Court or other County Officer designated by the County governing authority:

> the used and void ballots and the stubs of all ballots used; one copy of the oaths of poll officers; and one copy of each numbered list of voters, tally paper, voting machine paper proof sheet, and return sheet involved in the primary or election. In addition, the superintendent shall deliver copies of the voting machine ballot labels, computer chips containing ballot tabulation programs, copies of computer records of ballot design, and similar items or an electronic record of the program by which votes are to be recorded or tabulated, which is captured prior to the election, and which is stored on some alternative medium such as a CD-ROM or floppy disk simultaneously with the programming of the PROM or other memory storage device. The clerk, county records manager, or the office or officer designated by the clerk shall hold such ballots and other documents under seal, unless otherwise directed by the superior court, for at least 24 months, after which time they shall be presented to the grand jury for inspection at its next meeting.

O.C.G.A. § 21-2-500(a). Thus, to the extent Plaintiffs can later demonstrate a need for any of this information, they can pursue discovery at the appropriate time and there is no need for a preservation order.

6

**III. Even if Plaintiff could demonstrate good cause, non-party counties possess the bulk of information Plaintiff seeks, and the likely benefit of the discovery is marginal.**

As discussed in State Defendants' motion to dismiss, non-party counties maintain possession, custody, and control of the BMDs and scanners—not State Defendants. *See* O.C.G.A. § 21-2-379.26(b) (requiring county superintendents store devices). And Plaintiff bears the burden to show otherwise. *See United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1985). Regardless, those counties are also in the midst of conducting elections, and requiring them to embark on discovery concerning Plaintiff's latest iteration of the same failed arguments now at least three times in this district would impose undue burden on those non-parties, placing it beyond the scope of discovery under Rule 26(b)(1). *See generally Pearson v. Kemp*, No. 1:20-cv-4809-TCB, ECF No. 52 at pp. 8–11 (State Defendants' Motion to dissolve TRO, discussing burden on non-party counties regarding *pre*-election discovery).

Moreover, the discovery requested is nearly all either irrelevant to the claims and defenses at issue or provides only marginal benefit. In this regard, State Defendants offer the following responses regarding availability, relevance, and benefit of the items identified in the Motion:

- Preservation of "all original absentee ballots for the January 5, 2021 Senate Runoff," the envelopes, and "images recorded or generated by the Ballot Marking Devices." [Doc. 3, ¶ 2]. As discussed above, those ballots are already required to be retained. Separately, no images of ballots are recorded or generated by the BMD because the BMDs do not count votes, thus any examination of the BMD is beyond the scope of Plaintiffs' Complaint. Finally, once the signature review has occurred it is impossible to trace an envelope to an individual ballot to preserve ballot secrecy, and on the grounds Plaintiff has alleged, there is no basis to nullify the State's constitutional requirement in this regard. *See* Ga. Const. Ga. Const. Art. 2, Sec. 1, Para. I; *Burson v. Freeman*, 504 U.S. 191, 206–07 (1992).

- "Preservation of the in-person voters' original paper ballots . . . and inspection of the audit trail." [Doc. 3, ¶ 3]. Like the first category, these documents are also retained and images of ballots are not recorded by the BMDs. Finally, State Defendants are unaware of the meaning of "audit trail" and therefore cannot adequately respond.

- "[P]reservation of electronic election/voting equipment and related documentation, including audit reports and/or documentation related to any audits conducted by Pro V&V" in twelve non-party counties. [Doc.

3, ¶ 4] Again, information is retained. No "audits" are conducted by Pro V&V, but their system certifications are publicly available on the EAC's website.[1] Additionally, Plaintiff has already filed in this case numerous pleadings from *Curling v. Raffensperger*, No. 1:17-cv-2989-AT (N.D. Ga.). Presumably, Plaintiff is aware that various certification reports are already filed in the public docket there. Finally, Plaintiff's request will burden those counties' election operation plans and, given that the BMDs are in their possession, the proper discovery mechanism would require service upon them.

- Forensic examination of Dominion Voting Systems equipment. [Doc. 3, ¶¶ 5-6]. To the extent this request is not duplicative of others, it implicates the intellectual property rights of non-party Dominion. Moreover, such forensic examination occurring during the course of the election would frustrate the efficient administration of the election, removing any machines so forensically examined from use in the election and exposing both the State Defendants and counties to potential litigation.[2]

---

[1] *See* United States Election Assistance Commission, System Certifications, https://www.eac.gov/voting-equipment/democracy-suite-55-modification.
[2] It does not much require a full recounting of litigation history here, but suffice to say that campaigns' and political parties' attempts, on both sides, to

- "The names and addresses of all eligible voters in the runoff election." [Doc. 3, ¶ 7]. This is publicly available data that can be purchased from the Secretary of State.

To the extent the Court finds these requests are even relevant, Plaintiff's statements and rhetoric (both in and out of court) raise a heightened concern regarding security of the equipment. Elections systems are considered Critical Infrastructure by the Department of Homeland Security, a designation given to "systems and assets . . . so vital to the United States that [their] incapacity or destruction . . . would have a debilitating impact on security, national economic security, national public health or safety, or any combination of those matters." 42 U.S.C. § 519(c)(e). Thus, at minimum, a strict protective order must be in place before any such examination were to occur.

---

use the federal judiciary in furtherance of their political ends have been frequent recently. From Plaintiff and his allies, *see* [Doc. 16-1, pp. 1-2 (collecting cases)], and also from the Intervenor and their allies, just in this District. *See generally Anderson v. Raffensperger*, 1:20-CV-03263-MLB (alleging long lines and insufficient equipment); *Black Voters Matter Fund v. Raffensperger*, No. 1:20-CV-1489-AT; *Coalition for Good Governance v. Raffensperger*, No. 1:20-CV-1677-TCB; *New Georgia Project v. Raffensperger*, No. 1:20-CV-1986-ELR; *Fair Fight Action v. Raffensperger*, No. 1:18-CV-5391-SCJ (alleging long lines and insufficient equipment); *Curling v. Raffensperger*, No. 1:17-CV-2989-AT.

Finally, while this Court considers whether it is appropriate to waive the local rules as a matter of equity, it is pertinent to recall that Plaintiff, as a party to *Wood v. Raffensperger*, has already attempted to litigate some of these issues. Moreover, as counsel in *Pearson v. Kemp*, Plaintiff previously obtained an order from this Court similar to the one they seek now. Rather than actually pursue that discovery in the short window between the General Election and the beginning of early voting for the Runoff, the *Pearson* plaintiffs instead appealed this Court's grant of injunction to the Eleventh Circuit (which summarily found it lacked jurisdiction to hear the appeal). Put another way, this Court's prior grant of a preservation order shows at least its minimal benefit to Plaintiff's pursuit of his claims and counsels against grant of another motion here.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion is due to be denied. The Local Rules of this Court and Eleventh Circuit precedent counsel against pursuing discovery while a motion to dismiss raising jurisdictional concerns is pending. And Plaintiff has not demonstrated good cause to waive the Rules and pursue expedited discovery. Further, non-party counties and Dominion would be heavily burdened by granting the motion in the midst of an election

11

and without opportunity to be heard. Even still, relevant election data is maintained under existing law in the absence of an order in Plaintiff's favor demonstrating no need for a preservation order of the kind Plaintiff seeks. Accordingly, this Court should deny Plaintiff's Motion, and if Plaintiff's claims survive pending motions to dismiss, discovery can then be obtained in due course and with an appropriate protective order in place.

Respectfully submitted, this 24th day of December 2020.

*/s/ Carey Miller*
Carey Miller
Georgia Bar No. 976240
cmiller@robbinsfirm.com
Josh Belinfante
Georgia Bar No. 047399
jbelinfante@robbinsfirm.com
Melanie Johnson
Georgia Bar No. 466756
mjohnson@robbinsfirm.com
**Robbins Ross Alloy Belinfante Littlefield LLC**
500 14th Street NW
Atlanta, GA 30318
Telephone: (678) 701-9381
Facsimile: (404) 856-3250

*Counsel for State Defendants*

# **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing

STATE DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S

EMERGENCY MOTION FOR DISCOVERY was prepared double-spaced in

13-point Century Schoolbook font, approved by the Court in Local Rule

5.1(C).

> */s/Carey Miller*
> Carey Miller