UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| L. LIN WOOD, JR., | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| v. | ) | NO. 1:20-cv-5155-TCB |
| | ) | |
| BRAD RAFFENSPERGER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OMNIBUS RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS AND REPLY TO THE RESPONSE IN OPPOSITION TO HIS EMERGENCY MOTION FOR INJUNCTIVE RELIEF

Pursuant to the Federal Rules of Civil Procedure and Local Rule 7.1, and in accordance with this Court's December 21, 2020 Order [DE 12], Plaintiff hereby files his Omnibus Response in Opposition to State Defendants' Motion to Dismiss [DE 26], Intervenors' Motion to Dismiss [DE 16 & 24] and files his Reply to the Defendants' Responses in Opposition to his Emergency Motion for Injunctive Relief and states the following:

## INTRODUCTION

The motions to dismiss contend that Plaintiff's claims are baseless and that the evidence of fraud and illegality submitted in support of his claims have previously been adjudicated and discredited. To the contrary, no Judge or Court has adjudicated, discredited or commented on the merits of the substantial, voluminous

and documented evidence of voter fraud, but have simply denied emergency motions for injunctive relief. Defendants further assert that previous unsuccessful lawsuits challenging the November 3, 2020 election, which sought retrospective relief, somehow precludes the prospective relief requested concerning the upcoming January 5, 2021, senatorial run-off election. In the previous lawsuit Defendants argued that Plaintiff's Complaint was filed "too late" because it was filed after the November 3 election had already taken place, and thus was barred by the doctrine of laches. Defendants now suggest that Plaintiff's Complaint should be barred because he has not yet voted, may not vote in the runoff election and thus his Complaint has been filed "too early." Contrary to the Defendants' contentions, Plaintiff's claims are based on Constitutional claims, challenging the legitimacy of a federal election and are supported by substantial and voluminous evidence filed in this action, showing in multiple dimensions that the November 3rd election in the State of Georgia was conducted in an unconstitutional manner and was infected with fraud, politically biased counting, and illegality, which without this Court's intervention, will inevitably repeat itself in the runoff election. The evidence presented shows a substantial disregard for the General Assembly's Election Code for federal elections, which is clearly within the jurisdiction and power of a federal court to redress. See *Bush v. Gore*, 531 U.S. 98 (2000). Moreover, the First

Amendment of the U.S. Constitution provides Plaintiff, as a citizen and an aggrieved party, the right to petition the courts for a redress of grievances.

There is no question that Plaintiff has alleged sufficient facts to conduct an inquiry into whether the acts of the State's administrative agents significantly departed from the legislative scheme and that this Court has jurisdiction and authority pursuant to the First and Fifth Amendments, to redress these grievances.

In response to the enormous body of evidence which Plaintiff submitted, including affidavits from credible fact and expert witnesses substantiating the allegations set forth in Plaintiff's Complaint and request for emergency relief, the Defendants in turn ignore the voluminous evidence provided and falsely assert that Plaintiff is simply attempting to disrupt the State's orderly election process in the 2020 runoff election. Rather than addressing the evidence, Defendants offer circuitous arguments regarding standing, subject matter jurisdiction, laches and the failure to state a claim for relief – in an effort to misdirect the Court's consideration of the overwhelming evidence of fraud, attendant voting irregularities, unconstitutional political discrimination in the counting of votes and the State Defendant's wholesale departure from the legislative scheme. In short, the Defendants raise any and every conceivable excuse in an effort to continue to obfuscate the truth and essentially, "run out the clock" before the January 5, 2021 senatorial runoff election.

## STATEMENT OF FACTS

Plaintiff adopts and re-alleges the relevant facts as set forth in Plaintiff's Verified Complaint for Declaratory and Injunctive Relief, and additionally, relies on the numerous affidavits, declarations, and documentary evidence submitted in support of his application for injunctive relief.

## ARGUMENT

### I. Plaintiff Has Standing to Maintain This Lawsuit.

The Defendants contend that this Court lacks subject matter jurisdiction based on their assertion that Plaintiff lacks standing to bring this cause of action. The requirements for standing, under Article III of the Constitution, are three-fold: First, the plaintiff must have suffered, or must face an imminent and not merely hypothetical prospect of suffering, an invasion of a legally protected interest resulting in a "concrete and particularized" injury. Second, the injury must have been caused by the defendant's complained-of actions. Third, the plaintiff's injury or threat of injury must likely be redressable by a favorable court decision. *Fla. State Conference of NAACP v. Browning*, 522 F.3d 1153, 1159 (11th Cir.2008). An injury sufficient for standing purposes is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, (1992).

In the voting context, "voters who allege facts showing disadvantage to themselves as individuals have standing to sue," *Baker v. Carr*, 369 U.S. 186, 206,

(1962), so long as their claimed injuries are "distinct from a 'generally available grievance about the government,'" *Gill v. Whitford*, 138 S.Ct. 1916, 1923 (2018)(quoting *Lance v. Coffman*, 549 U.S. 437, 439, 1 (2007) (per curiam).

Plaintiff Wood consistent with several constitutional provisions, has established an injury sufficient for standing. Specifically, under the Fourteenth Amendment of the U.S. Constitution, a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. The Fourteenth Amendment is one of several constitutional provisions that "protects the right of all qualified citizens to vote, in state as well as federal elections." *Reynolds v. Sims*, 377 U.S. 533, 554 (1964). Because the Fourteenth Amendment protects not only the "initial allocation of the franchise," as well as "the manner of its exercise," *Bush v. Gore*, 531 U.S. 98, 104, (2000), "lines may not be drawn which are inconsistent with the Equal Protection Clause ...." *Id*. at 105 (citing *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 665 (1966)).

The Supreme Court has identified two theories of voting harms prohibited by the Fourteenth Amendment. First, the Court has identified a harm caused by "debasement or dilution of the weight of a citizen's vote," also referred to "vote dilution." *Reynolds*, 377 U.S. at 555. Plaintiff presented a dilution claim below.

Second, the Supreme Court has found that the Equal Protection Clause is violated where the state, "[h]aving once granted the right to vote on equal terms,"

through "later arbitrary and disparate treatment, value[s] one person's vote over that of another." *Bush*, 531 U.S. at 104-05 (2000); see also *Baker v. Carr*, 369 U.S. 186, 208 (1962) ("A citizen's right to a vote free of arbitrary impairment by state action has been judicially recognized as a right secured by the Constitution, when such impairment resulted from dilution by a false tally, or by a refusal to count votes from arbitrarily selected precincts, or by a stuffing of the ballot box.") (internal citations omitted). The Plaintiff supplied evidence in the form of numerous affidavits outlining numerous irregularities in the actual re-counting of votes including attributing the votes of one candidate to the other, the failure of counters to compare signatures on absentee ballots with other signatures on file, processing of absentee ballots that appear to be counterfeit because they had no creases indicative of having been sent by mail, and the manner in which they were bubbled in, not allowing observers sufficient access to meaningfully observe the counting and concluding fraudulent conduct occurred during the vote re-counting. These irregularities, which occurred during the general election, gives rise to the level of an unconstitutional impairment and dilution of the Plaintiff's vote, which is imminent to occur again in the runoff election.

The second theory of voting harm requires courts to balance competing concerns around access to the ballot. On the one hand, a state should not engage in practices which prevent qualified voters from exercising their right to vote. A state

must ensure that there is "no preferred class of voters but equality among those who meet the basic qualifications." *Gray v. Sanders*, 372 U.S. 368, 379-80, 83 (1963). On the other hand, the state must protect against "the diluting effect of illegal ballots." *Id.* at 380. Because "the right to have one's vote counted has the same dignity as the right to put a ballot in a box," *id.*, the vote dilution occurs only where there is both "arbitrary <u>and</u> disparate treatment." *Bush*, 531 U.S. at 105. To this end, states must have "specific rules designed to ensure uniform treatment" of a voter's ballot. *Id*. at 106.

In *Bush*, the Supreme Court held that,"[h]aving once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." 531 U.S. at 104-05. Plaintiff has alleged that he has, and once again will be subjected to arbitrary and disparate treatment because he voted and will again vote under one set of rules, and other voters, through the guidance in the unlawful consent agreement, were permitted to vote, and will again be permitted to vote invalidly under a different and unequal set of rules, and that this is a concrete and particularized injury.

For the purposes of determining whether Plaintiff has standing, is it not "necessary to decide whether [Plaintiff's] allegations of impairment of his vote" by Defendants' actions "will, ultimately, entitle them to any relief," *Baker*, 369 U.S. at 208; whether a harm has occurred is best left to this court's analysis of the merits of

Plaintiff's claims. Instead, the appropriate inquiry is, "[i]f such impairment does produce a legally cognizable injury," whether Plaintiff "is among those who have sustained it." *Baker*, 369 U.S. at 208.

For purposes of standing, a denial of equal treatment is an actual injury even when the complainant is able to overcome the challenged barrier:

> When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The "injury in fact" in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.

*Ne. Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993).

The Supreme Court has rejected the argument that an injury must be "significant"; a small injury, "an identifiable trifle," is sufficient to confer standing. *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n. 14, 93 (1973). Plaintiff Wood submits that he has suffered an injury sufficient to confer standing. "A plaintiff need not have the franchise wholly denied to suffer injury. Any concrete, particularized, non-hypothetical injury to a legally protected interest is sufficient." *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1352 (11th Cir. 2005).

For instance, requiring a registered voter to produce photo identification to vote in person, but not requiring a voter to produce identification to cast an absentee or provisional ballot is sufficient to demonstrate disparate treatment and thus, an injury sufficient for standing.

Additionally, the inability of a voter to pay a poll tax, for example, is not required to challenge a statute that imposes a tax on voting, *see Harper v. Va. State Bd. Of Elections*, 383 U.S. 663, 668 (1966), and the lack of an acceptable photo identification is not necessary to challenge a statute that requires photo identification to vote in person. Because Plaintiff Wood has demonstrated that the unlawful "Consent Agreement" subjected him to arbitrary and disparate treatment, vis-à-vis, other voters, he has clearly suffered a sufficient injury. See also *Roe v. Alabama*, 43 F. 3d 574, 580-581 (11th Cir. 1995)(voter and candidates in statewide election had standing to allege violation of their constitutional rights based on the counting of improperly completed absentee ballots, which diluted votes of the voters who met requirements of absentee ballot statute and those who went to the polls on election day.)

However, in *Roe*, the Court also cited the seminal voting rights cases of *Reynolds v. Sims*, 377 U.S. 533, 561 (1964) and *Baker v. Carr*, 369 U.S. 186, 206 (1962)) for the proposition that:

> "[V]oters who allege facts showing disadvantage to themselves as individuals have standing to sue to remedy

that disadvantage" *Gill v. Whitford*, 138 S. Ct. 1916, 1923 (2018), (quoting Reynolds v. Sims, 377 U.S. 533, 561 (1964); *Baker v. Carr*, 369 U.S. 186, 206 (1962)). Claims premised on allegations that "the law . . . has not been followed . . . [are] precisely the kind of undifferentiated, generalized grievance about the conduct of government . . . [and] quite different from the sorts of injuries alleged by plaintiffs in voting rights cases where we have found standing." *Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324, 1332–33 (11th Cir. 2007) (citing *Baker*, 369 U.S. at 207–08).

The Court noted that it had continuously distinguished between the "undifferentiated, generalized grievance about the conduct of government" from the cases where "a private citizen had alleged a 'concrete and particularized' injury sufficient to satisfy the requirements of Article III." *Lance* at 439.

The claims asserted by Mr. Wood, on behalf of himself and all other in-person voters similarly situated, are not "generalized grievances about the conduct of government." In this case, based on the unconstitutional voting procedures implemented by the State Defendants, Mr. Wood will once again be subjected to a concrete and particularized harm, by way of the dilution of his vote, since the Defendants' previous actions in permitting massive amounts of unverified signatures that flooded the general election in Georgia, is likely to repeat itself, yet their procedures have evaded review.

## II. Laches does not bar Plaintiff Wood's claims.

Defendants assert that Plaintiff's claims are barred by laches.

> Laches is "a defense developed by courts of equity" to protect defendants against "unreasonable, prejudicial delay in commencing suit." *Petrella*, supra at ___, ___ (slip op., at 1, 12). *See also* 1 D. Dobbs, Law of Remedies §2.3(5), p. 89 (2d ed. 1993)(Dobbs)("the equitable doctrine of laches bars the plaintiff whose unreasonable delay in prosecuting a claim or protecting a right has worked a prejudice to the defendant").

*SCA Hygiene Prod, Aktiebolag v. First Quality Baby Prod., LLC*, 137 S. Ct. 954, 960 (2017).

Laches consists of two elements, neither of which are met here: (1) unreasonable delay in asserting one's rights; and (2) a resulting prejudice to the defending party. *Meade v. Pension Appeals and Review Committee*, 966 F.2d 190, 195 (6th Cir. 1992). The bar is even higher in the voting rights or election context, where defendants asserting the equitable defense must show that the delay was due to a "deliberate" choice to bypass judicial remedies and they must do so "by clear and convincing" evidence. *Toney v. White,* 488 F.2d 310, 315 (5th Cir. 1973). The cases relied on by the Defendants in this case are in opposite, as the plaintiffs in those cases waited years to file a challenge on the eve of an election or as the Defendants asserted that in *Wood I*, the claim was not filed until two weeks *after* the General Election. In the instant case, Plaintiff Wood has not unreasonably delayed, but rather, filed his claim *weeks before* the runoff election. Evidently, Defendants suggest that laches applies irrespective of whether the claim is filed *before or after* the election.

A federal court's jurisdiction can be invoked when the plaintiff himself has suffered some threatened or actual injury. *Warth v. Seldin*, 95. S. Ct. 2197, 2205 (1975). Moreover, a litigant has standing to challenge the constitutionality of a law if the law has an adverse impact on the litigant's own rights. *Feminist Women's Health Center v. Burgess*, 282 Ga. 433 (Ga. 2007). Federal courts, including the Eleventh Circuit, have recognized that the doctrine of laches does not bar a constitutional challenge. *Democratic Executive Committee of Florida v. Lee*, 915 F. 3d 1312, 1326 (11th Cir. 2019)(laches did not bar claims challenging Florida's vote by mail ballot rejection rules where action was initiated about one year after the state's rule was adopted); *Democratic Party of Georgia v. Crittenden*, 347 F. Supp. 3d 1324 1338-1339 (N.D. Ga. 2018)(organization's constitutional claims challenging rejection of absentee ballots in pending general election and statutory framework for curing and counting provisional ballots were not barred by doctrine of laches as many issues regarding voter's experiences did not arise until after election day); *Public Citizen, Inc. v. Miller*, 813 F. Supp. 821, 827 (N.D. Ga. 1993)(claims by plaintiff voters who voted for senatorial candidate who received plurality vote but lost runoff election were not barred by laches, despite being brought four weeks after runoff election because they were not ripe prior to the runoff). Accordingly, Plaintiff's claims and request for injunctive relief are clearly not barred by laches.

Indeed, the State Defendants' violation of the Plaintiff's constitutional right to Equal Protection is an ongoing violation. Consequently, federal courts have recognized that laches is inapplicable to cases where the injury is continuing. *See League of Women Voters of Michigan v. Benson*, 373 F. Supp 3d 867, 908-909 (E.D. Mich. 2019) ( recognizing laches does not apply to ongoing or recurring harms), vacated on other grounds, *Chatfield v. League of Women Voters of Michigan*, 140 S. Ct. 2019; *Smith v. Clinton*, 687 F. Supp. 1310, 1312-1313 (E.D. Ark. 1988)(laches did not bar challenge by black registered voters in dual member state legislative district despite being filed 7 years after the apportionment plan because constitutional injury was a continuing injury).

Had the Plaintiff filed suit when the settlement agreement was publicly filed, the State Defendant no doubt would have then argued Plaintiff lacked standing because any injury he could have claimed at that time was merely hypothetical and/or not ripe. As such, Plaintiff's claims are not barred by laches.

## III. The Eleventh Amendment is not a bar to Plaintiff Wood's claims.

Defendants assert that Plaintiff's claim is barred by the Eleventh Amendment because such amendment prevents this Court's exercise of judicial power to order state officials to conform their conduct to state law. However, the Defendants' arguments are simply a red herring, as by its own terms, Art. I, § 4, cl. 1 of the Constitution empowers both Congress and state legislatures to regulate the "times,

places and manner of holding elections for Senators and Representatives." Clearly, Plaintiff's claim, which raises a constitutional violation concerning the "times, places and manner" of conducting the Senatorial Runoff Election is not barred by the Eleventh Amendment, as it sets forth a violation of federal law.

While the contours of the Eleventh Amendment's jurisdictional bar are ambiguous in many cases, this is not one of them. As the Court held in *Fair Fight Action, Inc. v. Raffensperger*, 413 F. Supp. 3d 1251 (N.D. Ga. 2019):

> Under the doctrine enunciated in *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), … a suit alleging a violation of the federal constitution against a state official in his official capacity for injunctive relief on a prospective basis is not a suit against the state, and, accordingly, does not violate the Eleventh Amendment." *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011) (citations omitted); *see also Alden v. Maine*, 527 U.S. 706, 756-57, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) ("The rule [of sovereign immunity], however, does not bar certain actions against state officers for injunctive or declaratory relief.") and *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 n.10, 109 S.Ct. 2304 ("Of Course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'").

*Id*. at 1278. The Court further held:

> In addition, the remedy of prospective injunctive relief is "not the 'functional equivalent' of a form of relief barred by the Eleventh Amendment." *Id*. The proposed remedy also will not resolve "for all time," Georgia's election system.

*Id*. at 1280.

The Sixth Circuit recently addressed the scope of Eleventh Amendment Sovereign immunity in the election context, in *Russell v. Lundergan-Grimes,* 784 F.3d 1047, 1045 (6th Cir. 2015). In *Russell*, the court held that federal courts do in fact have the power to provide injunctive relief where the defendant, "The Secretary of State, and members of the State Board of Elections," were, like State Defendants, "empowered with expansive authority to 'administer election laws of the state.'" *Id.* at 1047 (internal quotations omitted). The court held that the Eleventh Amendment did not bar a federal court from "[e]njoining a statewide official under *Young* based on his obligation to enforce a law is appropriate" where the injunctive relief requested sought to enjoin actions that was within the official's statutory authority." *Id*.

## IV.   Plaintiff Wood's Guarantee Clause Claim is justiciable.

Plaintiff Wood has properly set forth a claim asserting a violation of the Guarantee Clause of Article IV, § 4 of the U. S. Constitution. Specifically, when a cause of election fraud, loss, or dilution of the right to vote is by state action, this elevates the matter into an Art. IV, § 4 claim, mandating judicial protection. "[T]he right to vote is inherent in the republican form of government envisaged by Article IV, § 4 of the Constitution." *Baker v. Carr,* 369 U.S. 186, 242 (1962). "[E]mphasis on this basic right to vote is essential to the fair workings of the democratic process under our republican form of government." *Kessler v. Grand Cent. Dist.*

*Management Ass'n, Inc.*, 158 F.3d 92, 118 (2d Cir.1998). Federal Courts are institutions of the United States which are constitutionally compelled to enforce this guarantee. *See* Art IV, § 4.

Undeniably, the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections. A consistent line of decisions by the Supreme Court in cases involving attempts to deny or restrict the right of suffrage has made this indelibly clear. It has been repeatedly recognized that all qualified voters have a constitutionally protected right to vote, *Ex parte Yarbrough*, 110 U.S. 651 (1884), and to have their votes counted, *United States v. Mosley*, 238 U.S. 383 (1915). In *Mosley*, the Court stated that it is 'as equally unquestionable that the right to have one's vote counted is as open to protection * * * as the right to put a ballot in a box.' 238 U.S. at 386. The right to vote can neither be denied outright, *Guinn v. United States*, 238 U.S. 347 (1915); *Lane v. Wilson*, 307 U.S. 268 (1939), nor destroyed by alteration of ballots, *see United States v. Classic*, 313 U.S. 299 (1941), nor diluted by ballot-box stuffing. *See Ex parte Siebold*, 100 U.S. 371 (1879); *United States v. Saylor*, 322 U.S. 385 (1944). As the Court stated in *Classic*, "Obviously included within the right to choose, secured by the Constitution, is the right of qualified voters within a state to cast their ballots and have them counted * * *." *See Classic* at 315. History has seen a continuing expansion of the scope of the right of suffrage in this country. The right to vote freely

for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government. Furthermore, the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise. *Reynolds*, 377 U.S. at 554–55.

Indeed, *Bush v. Gore*, 531 U.S. 98 (2000), addressed issues like those present in this case, where the constitutionality of election procedures was challenged. In deciding the issue, the Supreme Court determined such challenges to be justiciable. Just like in *Bush v. Gore*, Plaintiff Wood is seeking to invoke the Court's protection of the fundamental right of the voters.

## V.     Plaintiff Wood has stated claims for relief.[1]

1.     The 12(b)(6) Standard.

Fed.R.Civ.P. 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." In order to survive a motion to dismiss, a plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550

---

[1]   Defendants prematurely assert that Plaintiff has not complied with Rule 4 by perfecting service of process, knowing full well that the Verified Complaint was filed on December 18, 2020 and Rule 4 provides that the Plaintiff shall have 90 days to perfect service of process, thus Plaintiff still has 81 days to perfect service.

U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). While it is true that a pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" may be subject to dismissal under Rule 12(b)(6), the "facial plausibility" standard does not give rise to a "probability requirement" at the pleading stage. *Twombly* at 556. The standard merely "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Id.* In doing so, the Court must accept all the plaintiff's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell,* 516 F.3d 1282, 1284 (11th Cir.2008).

*Twombly* suggests that the Court adopt a "two-pronged approach" in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Under *Twombly* and *Iqbal,* courts may infer from the factual allegations in the complaint "obvious alternative explanation[s]," which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.

Defendant Intervenors argue the Court should apply Rule 9(b) to this election case and require that the alleged fraud be plead with particularity. This rule has no

application to the context of election fraud or illegality because of the problems of proof in such cases arising from a constitutional guarantee of a private ballot. In election contests, it is only necessary to show enough fraud or illegality or irregularity to put the outcome in doubt – one does not have to prove conclusively what the outcome would have been but for the fraud. O.C.G.A. § 21-2-522. Therefore, pleading standards applicable to common law fraud claims, which always involve a claim of but for causation of actual damages, should not be applied to election disputes. In an election contest it is not necessary to show how the illegal ballots were voted because once ballots have been introduced into the pool that will be counted, it is normally not possible to identify which were illegally cast or counted.

Recognizing this reality, the Georgia Supreme Court has held,

The fallacy in the trial court's analysis is demonstrated by the impossibility of determining how the 481 electors would have voted had they been supplied with proper ballots. … It is precisely for this reason that we have held that the focus in an election contest involving illegal ballots is on whether they "exceeded ... the margin of victory." *Howell v. Fears*, supra at 628, 571 S.E.2d 392. Thus,

[i]t was not incumbent upon [Plaintiff] to show how the [] voters would have voted if their [absentee] ballots had been regular. [Plaintiff] only had to show that there were enough irregular ballots to place in doubt the result.

*Mead v. Sheffield*, 278 Ga. 268, 272, 601 S.E.2d 99, 102 (2004) (citing *Howell v. Fears*, 275 Ga. 627, 571 S.E.2d 392 (2002). *See also Miller v. Picacho Elementary*

*Sch. Dist. No.* 33, 179 Ariz. 178, 180, 877 P.2d 277, 279, (S. Ct.1994) ("We therefore hold that a showing of fraud is not a necessary condition to invalidate absentee balloting. It is sufficient that an express non-technical statute was violated, and ballots cast in violation of the statute affected the election."). Moreover, even if Rule 9(b) were applicable, the Verified Complaint as summarized above particularizes the precise fraudulent conduct alleged here.

2.     Plaintiff's Claims more than satisfy Plausible standard.

Turning to the plausibility inquiry, the Defendants contend that the Plaintiff's claims are "simply not plausible." Plaintiff, however, has clearly met the pleading stage plausibility analysis because his claims are copiously supported with eyewitness and expert testimony. Plaintiff's offer of proof and documented evidence of fraud must be assumed and accepted as true at this stage of the proceedings. This is more than enough to surpass the 12(b)(6) standard under *Twombly* and *Iqbal*.

3.     Plaintiff has Plead an Equal Protection Violation.

Defendants also absurdly contend that plaintiff has failed to state a claim that the Equal Protection clause was violated. There is a cognizable equal protection violation claim by the dilution of votes when tens of thousands of illegal ballots are injected into the electoral process. There is an Equal Protection violation in the use of Dominion equipment that confers a politically discriminatory 5% advantage to a particular candidate (Biden) as compared to

other election systems. There is an Equal Protection violation in the de facto

abolition of the signature match requirement for absentee ballots as compared to

in person voting in which voters have to provide proof of their identity. The receipt

and counting of more than one million absentee ballots for which there was no

effective signature match violates the Georgia Election Code and subjects absentee

voters and in person voters to disparate treatment. Counting 20,188 votes from

non-residents unconstitutionally dilutes the votes of legal residents. The Equal

Protection violations in this case are plain and obvious under a large body of "one

person one vote" case law from *Baker v. Carr*, 369 U.S. 186 (1962), *Reynolds v.*

*Sims*, 377 U.S. 533 (1964) and *Bush v. Gore*.

> In Equal Protection cases, it has been made clear that [o]ur treatment of anecdotal evidence in *Cone Corp.* and *Ensley Branch* is consistent with the formulation in Justice O'Connor's *Croson* plurality opinion that 'evidence of a pattern of individual discriminatory acts can, *if supported by appropriate statistical proof*, lend support to a local government's determination that broader remedial relief is justified,' 488 U.S. at 509, (citation omitted) (emphasis added). In light of *Croson's* guidance on the point, and our decisions in *Cone Corp.* and *Ensley Branch*, we believe that anecdotal evidence can play an important role in bolstering statistical evidence, but that only in the rare case will anecdotal evidence suffice standing alone.

*Engineering Contrs. Ass'n v. Metropolitan Dade County*, 122 F.3d 895, 925(11th Cir.

1997) (*citing Richmond v. J. A. Croson Co*., 488 U.S. 469, 509, (1989). "Moreover,

evidence of a pattern of individual discriminatory acts can, if supported by

appropriate **statistical** proof, lend support to a local government's determination that broader remedial relief is justified." *Id*.

Plaintiff has offered such statistical evidence.

4. Plaintiff has Plead a Due Process Violation.

Similarly, the Verified Complaint states a claim for violation of the Due Process clause. The Settlement Agreement and Rule 183-1-14-0.9-.15 were adopted in violation of the Georgia Election Code, depriving Plaintiff of his rights thereunder without Due Process. The fundamental right to vote protected by the Fourteenth Amendment is cherished in our nation because it "is preservative of other basic civil and political rights." *Reynolds*, 377 U.S. at 562. Voters have a "right to cast a ballot in an election free from the taint of intimidation and fraud," *Burson v. Freeman*, 504 U.S. 191, 211 (1992), and "[c]onfidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam).

"Obviously included within the right to [vote], secured by the Constitution, is the right of qualified voters within a state to cast their ballots and have them counted" if they are validly cast. *United States v. Classic*, 313 U.S. 299, 315 (1941). "[T]he right to have the vote counted" means counted "at full value without dilution or discount." *Reynolds*, 377 U.S. at 555, n.29 (quoting *South v. Peters,* 339 U.S. 276, 279 (1950) (Douglas, J., dissenting)).

"Every voter in a federal . . . election, whether he votes for a candidate with little chance of winning or for one with little chance of losing, has a right under the Constitution to have his vote fairly counted, without its being distorted by fraudulently cast votes." *Anderson v. United States*, 417 U.S. 211, 227 (1974); see also *Baker v. Carr*, 369 U.S. 186, 208 (1962). Invalid or fraudulent votes "debase[]" and "dilute" the weight of each validly cast vote. *See Anderson*, 417 U.S. at 227.

The right to an honest [count] is a right possessed by each voting elector, and to the extent that the importance of his vote is nullified, wholly or in part, he has been injured in the free exercise of a right or privilege secured to him by the laws and Constitution of the United States." *Anderson*, 417 U.S. at 226 (quoting *Prichard v. United States*, 181 F.2d 326, 331 (6th Cir.), *aff'd due to absence of quorum*, 339 U.S. 974 (1950)).

Practices that promote the casting of illegal or unreliable ballots or that fail to contain basic minimum guarantees against such conduct can violate the Fourteenth Amendment by leading to the dilution of validly cast ballots. *See Reynolds*, 377 U.S. at 555 ("[T]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise.").

The argument that Plaintiff has not stated a Due Process claim is without merit and should be rejected.

## VI. Plaintiff's Reply to Defendant's Response in Opposition to the Emergency Motion for Injunctive Relief.

The Defendants' responses to the motion for emergency injunctive relief is largely a rehash of the arguments made in their motion to dismiss – standing, mootness, laches, failure to state a claim dressed up as not likely to succeed on the merits, no irreparable harm and balancing of the equities. All of these contentions are addressed in the earlier arguments in this brief in response to the motions to dismiss. Two bites at the dismissal apple ought to be enough for the vast swarms of lawyers defending this case.

Plaintiff reiterates that he has demonstrated that he has satisfied the requirements for the grant of a TRO, in particular, substantial likelihood of success, and highlights this Court's decision to grant a TRO where plaintiffs brought a post-election challenge regarding the Defendant Secretary's implementation of Georgia election laws supported by substantial statistical evidence and witness declarations showing that the "infringement of the rights of the voters to cast their votes and have their votes counted." *Common Cause*, 347 F.Supp.3d at 1295.

## CONCLUSION

For the foregoing reasons, the motions to dismiss should be denied, and the motion for emergency injunctive relief should be granted.

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that the foregoing has been prepared in Times New Roman (14 point) font, as required by the Court in the Local Rules.

Respectfully submitted, this 27th day of December 2020.

*/s/ L. Lin Wood, Jr.*
L. Lin Wood, Jr., Esq.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing has been electronically filed with this Court via CM/ECF and was furnished to all counsel on the attached service list by e-mail on December 27, 2020:

*/s/ L. Lin Wood, Jr.*
L. Lin Wood, Jr., Esq.
GA Bar No. 774588
L. LIN WOOD, P.C.
P.O. BOX 52584
Atlanta, GA 30355-0584
(404) 891-1402
lwood@linwoodlaw.com

<u>**SERVICE LIST**</u>

Carey Miller
Josh Belinfante
Melanie Johnson
Robbins Ross Alloy Belinfante Littlefield LLC
500 14th Street NW
Atlanta, GA 30318
Tel.: (678) 701-9381
Fax:  (404) 856-3250
cmiller@robbinsfirm.com
jbelinfante@robbinsfirm.com
mjohnson@robbinsfirm.com

*Counsel for State Defendants*


Adam M. Sparks
Halsey G. Knapp, Jr.
Joyce Gist Lewis
Susan P. Coppedge
Adam M. Sparks
KREVOLIN AND HORST, LLC
One Atlantic Center
1201 W. Peachtree Street, NW, Ste. 3250
Atlanta, GA 30309
Telephone: (404) 888-9700
Facsimile: (404) 888-9577
hknapp@khlawfirm.com
jlewis@khlawfirm.com
coppedge@khlawfirm.com
sparks@khlawfirm.com

Marc E. Elias*
Amanda R. Callais*
Henry J. Brewster*
PERKINS COIE LLP
700 Thirteenth Street NW, Suite 800
Washington, DC 20005

Telephone: (202) 654-6200
melias@perkinscoie.com
acallais@perkinscoie.com
hbrewster@perkinscoie.com

Health L. Hyatt*
Steven Beale*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Telephone: (206) 359-8000
 hhyatt@perkinscoie.com
 sbeale@perkinscoie.com

Jessica R. Frenkel*
PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400
Denver, CO 80202
Telephone: (303) 291-2300
jfrenkel@perkinscoie.com


*Pro Hac Vice Application Pending

Counsel for Intervenor-Defendants